UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MASSACHUSETTS

CIVIL ACTION: 04-CV-11069-JLT

_____
                                                )
ABRAHAM PHILIP, MD                              )
                                                )
        Plaintiff,                              )
                                                )
vs.                                             )
                                                )
JOHN CRONIN, in his personal                    )
capacity.                                       )
                                                )
        Defendant.                              )
_____)


STATEMENT OF UNDISPUTED FACTS
IN SUPPORT OF PLAINTIFF'S MOTION FOR
PARTIAL SUMMARY JUDGMENT ON ISSUE OF
"SPEECH OF PUBLIC CONCERN"


        1.      On or about September 2, 2003, Dr. Philip entered into a contract for employment

with the Office of the Chief Medical Examiner ("OCME"). (Exhibit 1; Plaintiff's Affidavit.)

        2.      The contract mentioned above was the fourth time the OCME had hired Dr. Philip

or extended his employment contract. (Exhibit 1; Plaintiff's Affidavit.)

        3.      During and also before the period of October 2, 2003 to March 3, 2004, Dr. Philip

made, to John Cronin, numerous suggestions for what he believed would be improvements in the

operations of the OCME. (Exhibit 1; Plaintiff's Affidavit.)

        4.      On March 1, 2004, Dr. Philip wrote a letter to the Governor of the

Commonwealth of Massachusetts in which Dr. Philip expressed his opinions about problems in

the OCME and outlined some ideas for improvements. (Exhibit 2; 3/1/2004 letter.)

5.     A copy of Dr. Philip's letter to the Governor was provided to John Cronin and to OCME's Chief, Dr. Evans. (Exhibit 3; "Further Answers of Defendant Dr. Richard Evans MD to Plaintiff's Interrogatories; Interrogatory and Answer #9.)

6.     Dr. Philip sent a second letter to the Governor of the Commonwealth and to other medical examiners at the OCME pertaining to a case in which body parts had been harvested from an auto accident victim before the victim was brain dead. (Exhibit 4; "Organ Bank Letter.")

7.     The Organ Bank Letter concluded with, "I hope this Memo prompts a wider discussion between the NEOB [(New England Organ Bank)], Medical Examiners, District Attorneys, etc., so that everybody is comfortable with the decisions taken." (See, Exhibit 4; Organ Bank Letter.)

8.     Dr. Philip had been requested to approve the harvesting procedure referred to in Paragraph 7, above, on or about January 30, 2004, but had declined to do so for medical and ethical reasons. (Exhibit 1; Plaintiff's Affidavit.)

9.     When Dr. Philip declined to authorize the removal of body parts from a person who was not yet dead, the persons who wanted to harvest the body parts obtained the authorization of Chief Medical Examiner Dr. Richard Evans to do so. (Exhibit 1; Plaintiff's Affidavit.)

10.     Dr. Philip's second memo of March 2004 memo suggested that the removal of the body parts described above was not a good or appropriate procedure, and suggested a conference among appropriate personnel to discuss how such cases might be handled in the future. (Exhibit 4; Organ Bank Letter.)

11.     A copy of Dr. Philip's second letter to the Governor was provided to John Cronin and to OCME's Chief, Dr. Evans. (Exhibit 3; "Further Answers of Defendant Dr. Richard Evans MD to Plaintiff's Interrogatories; Interrogatory and Answer #10.)

12.  On March 3, 2004, John Cronin told the Defendant that he would no longer be permitted to conduct "cremation certification duty," a duty to which all other medical examiners were still assigned. (Exhibit 1; Plaintiff's Affidavit.)

13.  On March 3, 2004, Defendant-OCME fired the plaintiff by terminating his employment contract with the Office of Chief Medical Examiner. (Exhibit 5; letter of termination.)

14.  The letter terminating Dr. Philip expressly referred to the plaintiff's communications with members of the OCME and the district attorney's office as a reason for the Plaintiff's termination. (Exhibit 5; letter of termination.)

15.  It is the plaintiff's contention that his employment was terminated, at least in part, in retaliation for his speech in the letters described above and attached as Exhibits 2 and 4. (See, Complaint, paras. 40-44.)

### STATEMENTS OF LAW

1.  Even an at-will employee may not be dismissed for exercising rights protected under the First Amendment. Hennessy v. City of Melrose, 194 F.3d 237, 245 (1st Cir. 1999), citing Mount Healthy City Bd. of Educ. v. Doyle, 429 U.S. 274, 283-84, 50 L. Ed. 2d 471, 97 S. Ct. 568 (1977).

2.  A plaintiff who claims to have been discharged in retaliation for speech "bears an initial burden of showing that he had engaged in constitutionally protected speech or conduct and that such activity was a substantial or motivating factor underlying his discharge." Hennessy v. City of Melrose, 194 F.3d 237, 245 (1st Cir. 1999), citing Mount Healthy City Bd. of Educ. v. Doyle, 429 U.S. 274, 278, 50 L. Ed. 2d 471, S. Ct. 568 (1977).

3.  "The proximity in time between the protected activity and the alleged retaliation

is circumstantial evidence of motive." Guilloty Perez v. Pierluisi, 339 F.3d 43, 57 (1st Cir. 2003),

citing Ulrich v. City and County of San Francisco, 308 F.3d 968, 980 (9th Cir. 2002); Pike v.

Osborne, 301 F.2d 182, 185 (4th Cir. 2002.)

    4.    Whether the plaintiff engaged in speech on a matter of public concern "ultimately

embodies a legal determination appropriately made by the court in circumstances in which no

genuine dispute exists as to the substance of what the employee said and did." Hennessy, at 194

F.3d 246, citing Horstkoetter v. Department of Pub. Safety, 159 F.3d 1265, 1270-71 (10th Cir.

1998) and Brasslett v. Cota, 761 F.2d 827, 829 (1st Cir. 1985).

    5.    "The First Amendment protects employee speech about matters of public concern

even if the employee does not seek to make that speech to an audience outside the workplace."

Torres-Rosado v. Rotger-Sabat, 335 F.3d 1, 13 (1st Cir. 2003), citing Givhan v. W. Line Consol.

Sch. Dist., 439 U.S. 410, 414, 99 S.Ct. 693 (1979).

    6.    The fact that statements may be erroneous does not remove them from the

Constitution's protection.  Erroneous remarks are an inevitable by-product of unrestrained public

debate. Gertz v. Robert Welch, Inc., 418 U.S. 323, 340-41, 41 L. Ed. 2d 789, 94 S. Ct. 2997

(1974).

    7.    "Whether an employee's speech addresses a matter of public concern must be

determined by the content, form, and context of a given statement, as revealed by the whole

record." Connick v. Myers, 461 U.S. 138, 147-148 (1983).

    8.    Notwithstanding Connick, however, "It is not always necessary, however, to

examine the form and context of the expression…. Where a public employee speaks out on a

topic which is clearly a legitimate matter of inherent concern to the electorate, the court may

eschew further inquiry into the employee's motives as revealed by the "form and context" of the

expression.  Bates v. MacKay, 321 F. Supp. 2d 173, 179-180 (D. Mass. 2004), quoting O'Connor

v. Steeves, 994 F.2d 905, 913-914 (1st Cir. 1993). (Internal quotations omitted.)

　　　9.  It is "amply clear" that "public employee speech alleging a danger to public health or

safety is protected by the First Amendment." Cooper v. Town of Bar Nunn, 101 Fed. Appx. 324,

326 (10th Cir. 2004), quoting Lee v. Nicholl, 197 F.3d 1291, 1296 (10th Cir. 1999).

　　　10.　　A matter is one of public concern if it relates to "broad social or policy issues" or

the "way in which a government office [serves] the public." Sanguigni v. Pittsburgh Bd. of Pub.

Educ., 968 F.2d 393, 398 (3d Cir. 1992). This includes allegations of inefficiency, waste and

even fraud committed by county and state governments. Czurlanis v. Albanese, 721 F.2d 98 (3d

Cir. 1983). It is important whether the communications were made to someone in a position to

address and resolve the assertions. Sanguini, 968 F.2d at 398.


　　　　　　　　　　　　　　　　Respectfully Submitted,


　　　　　　　　　　　　　　　　_____
　　　　　　　　　　　　　　　　Daniel S. Sharp
　　　　　　　　　　　　　　　　Attorney for Plaintiff
　　　　　　　　　　　　　　　　(BBO 565524)
　　　　　　　　　　　　　　　　196 Atlantic Avenue
　　　　　　　　　　　　　　　　Marblehead, MA  01945
　　　　　　　　　　　　　　　　781-639-1862

Certificate of Service
Daniel S. Sharp certifies that a copy of the document above was served by U.S. Mail, first class,
with postage affixed, on counsel for all opposing parties on Thursday, June 09, 2005 to:

Attorney Jean M. Kelly
Assistant Attorney General
One Ashburton Place
Boston, MA  02108-1598

                       _____