UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MASSACHUSETTS

CIVIL ACTION: 04-CV-11069-JLT

| | |
|---|---|
| ABRAHAM PHILIP, MD | ) |
| | ) |
| Plaintiff, | ) |
| | ) |
| vs. | ) |
| | ) |
| JOHN CRONIN, in his personal capacity. | ) |
| | ) |
| Defendant. | ) |

BRIEF IN SUPPORT OF
PLAINTIFF'S MOTION FOR PARTIAL SUMMARY
JUDGMENT ON ISSUE OF "SPEECH
OF PUBLIC CONCERN"

Pursuant to F.R.Civ.P. 56(a) and (d), the plaintiff has moved for partial summary judgment on one of the dispositive issues in this case. That issue is whether Plaintiff-Dr. Philip engaged in speech related to "matters of public concern" before he was terminated from his employment with the Office of the Chief Medical Examiner (OCME).

Whether the things about which Dr. Philip spoke were "matters of public concern" is a dispositive issue because, if they were **not** matters of public concern, Dr. Philip's First Amendment claim under 42 USC Section 1983 would have to be dismissed.

ABBREVIATED STATEMENT OF THE CASE

Dr. Philip was employed by contract with the Office of the Chief Medical Examiner (OCME) during September of 2003. He had previously been employed on a contract basis by the OCME. (Exhibit 1; Plaintiff's Affidavit.) (Exhibits are part of the Statement of Undisputed Facts.)

Dr. Philip contends that, from the beginning of his employment and leading to his termination on March 4, 2004, he was faced with escalating hostility from his superiors at the OCME.

Dr. Philip contends that, during and also before the period of October 2, 2003 to March 3, 2004, Dr. Philip pointed out to his superior, John Cronin, numerous ways in which the operations of the OCME violated state regulations, violated state law, or created dangers to public health and safety. (Exhibit 1; Plaintiff's Affidavit.)

On March 1, 2004, Dr. Philip wrote a letter to the Governor of the Commonwealth of Massachusetts in which Dr. Philip expressed his opinions about problems in the OCME and outlined some ideas for improvements. (Exhibit 2; 3/1/2004 letter.)

A copy of Dr. Philip's letter to the Governor was provided to John Cronin and to OCME's Chief, Dr. Evans. (Exhibit 3; "Further Answers of Defendant Dr. Richard Evans MD to Plaintiff's Interrogatories; Interrogatory and Answer #9.)

Dr. Philip also wrote a second letter to the Governor of the Commonwealth and to other medical examiners at the OCME pertaining to a case in which body parts had been harvested from an auto accident victim before the victim was brain dead. (Exhibit 4; "Organ Bank Letter.")

Dr. Philip had been requested to approve the harvesting procedure on or about January

2

30, 2004, but had declined to do so for medical and ethical reasons. (Exhibit 1; Plaintiff's Affidavit.)

Dr. Philip's second letter suggested that the removal of the body parts described above was not a good or appropriate procedure, and suggested a conference among appropriate personnel to discuss how such cases might be handled in the future. It concluded with, "I hope this Memo prompts a wider discussion between the NEOB [(New England Organ Bank)], Medical Examiners, District Attorneys, etc., so that everybody is comfortable with the decisions taken." (Exhibit 4; Organ Bank Letter.)

A copy of Dr. Philip's second letter to the Governor was provided to John Cronin and to OCME's Chief, Dr. Evans. (Exhibit 3; "Further Answers of Defendant Dr. Richard Evans MD to Plaintiff's Interrogatories; Interrogatory and Answer #10.)

On March 3, 2004, John Cronin told the Defendant that he would no longer be permitted to conduct "cremation certification duty", a duty to which all other medical examiners were still assigned. (Exhibit 1; Plaintiff's Affidavit.)

On March 4, 2004, Defendant-OCME fired the plaintiff by terminating his employment contract with the Office of Chief Medical Examiner. (Exhibit 5; letter of termination.)

The letter terminating Dr. Philip expressly referred to the plaintiff's communications with members of the OCME and the district attorney's office as a reason for the Plaintiff's termination. (Exhibit 5; letter of termination.)

It is the plaintiff's contention that his employment was terminated, at least in part, in retaliation for his speech in the letters described above. (See, Complaint, paras. 40-44.)

In order for the plaintiff to have a valid, First Amendment claim under Section 1983, his

speech must have been directed to matters of public concern.

### DR. PHILIP'S STATEMENTS WERE UPON MATTERS OF PUBLIC CONCERN

The general rule is that, "Whether an employee's speech addresses a matter of public concern must be determined by the content, form, and context of a given statement, as revealed by the whole record." Connick v. Myers, 461 U.S. 138, 147-148 (1983.)

In this case, however, the fact that the statements were upon matters of public concern can, and should, be decided without examining the Connick elements. As this court has held:

> It is not always necessary, however, to examine the form and context of the expression…. Where a public employee speaks out on a topic which is clearly a legitimate matter of inherent concern to the electorate, the court may eschew further inquiry into the employee's motives as revealed by the "form and context" of the expression.
>
> Bates v. MacKay, 321 F. Supp. 2d 173, 179-180 (D. Mass. 2004), quoting O'Connor v. Steeves, 994 F.2d 905, 913-914 (1st Cir. 1993). (Internal quotations omitted.)

Some of Dr. Philip's speech was made inside the workplace to supervisors and other employees. Such speech, if it touched upon matters of public concern, would be protected by the First Amendment. Torres-Rosado v. Rotger-Sabat, 335 F.3d 1, 13 (1st Cir. 2003), citing Givhan v. W. Line Consol. Sch. Dist., 439 U.S. 410, 414, 99 S.Ct. 693 (1979).

Dr. Philip's speech was made to public officials including the Governor. Among the matters complained of to the Governor and public officials was OCME's failing to conduct adequate toxicological studies of newly-deceased hospital and nursing home patients who presented to OCME with high levels of morphine in their body. (Exhibit 2.) Such studies would (or could) protect the elderly and infirm from possible negligence or murder.

The fact that Dr. Philip's speech was directed toward the Governor is important in analyzing whether his speech was upon a matter of public concern. The Third Circuit has held that a matter is one of public concern if it relates to "broad social or policy issues" or the "way in which a government office [serves] the public." Sanguigni v. Pittsburgh Bd. of Pub. Educ., 968 F.2d 393, 398 (3d Cir. 1992). The Sanguigni Court also held that it is important whether the communications were made to someone in a position to address and resolve the assertions. Sanguigni, 968 F.2d at 398. Dr. Philip directed his speech to the chief executive of the Commonwealth, *the* person most directly able to "resolve the assertions" he made concerning the OCME and its management.

Another topic addressed by Dr. Philip was OCME's failure to conduct adequate toxicological studies of deceased persons for illicit drugs such as Ecstasy, PCP, Fentanyl, Ketamine, or abuse of prescription drugs. These toxicological studies would, or could, help the police in the interdiction of such substances.

Dr. Philip discussed in his letters the OCME's failure to conduct timely microbiological studies of deceased persons to detect infectious diseases. These studies would, or could, help OCME and other public officials notify the public about outbreaks of Hepatitis, Influenza, Severe Acute Respiratory Syndrome, and West Nile virus.

Dr. Philip also complained of one case in which the OCME permitted the removal of organs from a hospital patient who was not yet brain-dead. (Exhibit 4.)

The defendant will argue that Dr. Philip's complaints were factually in error, particularly with regard to the "brain-death" issue. But this is not important. The fact that statements may be erroneous does not remove them from the protection of the First Amendment. Erroneous

remarks are an inevitable by-product of unrestrained public debate. Gertz v. Robert Welch, Inc., 418 U.S. 323, 340-41, 41 L. Ed. 2d 789, 94 S. Ct. 2997 (1974).

In Perez v. Pierluisi, 339 F.3d 43 (1st Cir. 2003), the First Circuit considered whether the plaintiff's statements (for which he was fired) were matters of public concern. The plaintiff was a member of the Puerto Rico Department of Justice. One of the allegations he made was that the Special Investigations Bureau of the Department had mishandled a drug investigation. (Id, at 52.) This is similar to Dr. Philip's allegation that the OCME repeatedly failed to conduct studies of deceased persons for illicit drugs.

The Perez Court concluded that:

> [Plaintiff's] statements described his suspicion that the SIB was mishandling a potentially important investigation… The diligence and lawfulness of a police department's activities are matters of great interest to the public.

Id., at 52.

Like the police department in Perez, the OCME is involved in criminal investigations. It is routinely engaged in public health investigations. These are matters of great public concern.

Some courts have limited "public concern" to information needed to enable citizens to make informed decisions about the operation of their government, needed to disclose misconduct, or needed to generate public debate on some issue of significant public interest. Brayton v. Monson Public Schools, 950 F.Sup. 33, 37 (D.Mass.1997). It is beyond fair dispute that the operations of the OCME, particularly those operations which concern the identification and control of infectious diseases (See, Complaint, para. 14), implicate issues of significant public concern.

The First Circuit has held that raising questions relating to a town's fire-fighting preparations is a matter of public concern because it concerns "protection to the public." Brasslett v. Cota, 761 F.2d 827, 846 (1st Cir. 1985).

It is "amply clear" that "public employee speech alleging a danger to public health or safety is protected by the First Amendment." Cooper v. Town of Bar Nunn, 101 Fed. Appx. 324, 326 (10th Cir. 2004), quoting Lee v. Nicholl, 197 F.3d 1291, 1296 (10th Cir. 1999).

Dr. Philip alleged potential misconduct and sought to generate public debate about serious issues relating to public health, police protection, and the care of the elderly. These were matters of public concern. An argument to the contrary cannot be advanced in good faith.

## THE POSSIBILITY OF SANCTIONS

The Defendant's position that Dr. Philip's speech was not on an issue of public concern (See, Answer, Sixth Defense) cannot have been advanced in good faith under Rule 11. The defense is frivolous and may merit sanctions. Nyer v. Winterthur Int'l, 290 F.3d 456 (1st Cir. 2002); Cruz v. Savage, 896 F.2d 626, (1st. Cir., February 20, 1990.)

## RELIEF REQUESTED

For the reasons of fact and law set forth in this brief, the plaintiff requests that the court:

(1) find, as a matter of law, that Dr. Philip's speech was speech on a matter of public concern;

(2) rule that the issue of speech on a matter of public concern is established for trial; and

(3) grant such other relief as is just and equitable under the circumstances.

Respectfully Submitted,

_____
Daniel S. Sharp
Elaine Whitfield Sharp
Attorneys for Plaintiff
(BBO 565524)
196 Atlantic Avenue
Marblehead, MA  01945
781-639-1862

7

<u>Certificate of Service</u>

Daniel S. Sharp certifies that a copy of the document above was served by U.S. Mail, first class, with postage affixed, on counsel for all opposing parties on Thursday, June 09, 2005 to:

Attorney Jean M. Kelly
Assistant Attorney General
One Ashburton Place
Boston, MA  02108-1598

_____