UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MASSACHUSETTS

CIVIL ACTION: 04-CV-11069-JLT

ABRAHAM PHILIP, M.D. )
    Plaintiff, )
)
v. )
)
JOHN CRONIN, )
    Defendant. )
)

### RESPONSE OF DEFENDANT JOHN CRONIN TO PLAINTIFF'S STATEMENT OF UNDISPUTED FACTS IN SUPPORT OF MOTION FOR PARTIAL SUMMARY JUDGMENT

In Support of Plaintiff's Motion for Partial Summary Judgment, Plaintiff has filed a Statement of Undisputed Facts. Defendant hereby responds to that Statement and submits that the following are Material Facts AsTo Which There Is A Genuine Issue To Be Tried.

**Plaintiff's Statement No. 4:** On March 1, 2004, Dr. Philip wrote a letter to the Governor of the Commonwealth of Massachusetts in which Dr. Philip expressed his opinions about problems in the OCME and outlined some ideas for improvements.

**Defendant's Response:** Defendant concedes that Plaintiff wrote a letter to the Governor on March 1, 2004, and that letter speaks for itself. However, Defendant submits that the letter was not a legitimate effort to communicate matters of public concern to the Governor. The matters

referred to by Plaintiff in his letter had already been the subject of at least two comprehensive audit reports prepared by Dallas Associates and by the National Association of Medical Examiners and had been widely disseminated. (Affidavit of John J. Cronin, Exhibit1, Paragraphs 13 and 14 and Exhibits G and H thereto.) Further, at the time of his writing the letter on March 1, 2004, Plaintiff had ample reason to believe that his contract with the OCME might be terminated, and in any determination of a constitutional violation, the court may scrutinize Plaintiff's motivation in advising the Governor of matters already widely known. (Affidavit of John J. Cronin and Exhibit 12 thereto.)

**Plaintiff's Statement No. 6:** Dr. Philip sent a second letter to the Governor of the Commonwealth and to other medical examiners at the OCME pertaining to a case in which body parts had been harvested from an auto accident victim before the victim was brain dead.

**Defendant's Response:** Defendant concedes that Plaintiff wrote a second letter to the Governor on March 1, 2004, and that letter speaks for itself. However, Defendant disputes in the case referenced by Plaintiff that "body parts had been harvested from an auto accident victim before the victim was brain dead." As discussed in the Affidavit of Kevin J. O'Connor, the case referred to involved a young man whose family had decided to withdraw treatment and who had subsequently consented to organ donation; the ventilator was removed; the patient's heart stopped beating; and the patient was declared dead in accordance with the law prior to the recovery of any organs. (Affidavit of Kevin J. O'Connor, Exhibit 2.) To the extent Plaintiff intends to rely in any way upon the letter and attachment annexed to Plaintiff's Statement of Undisputed Facts as Exhibit 4, Defendant also specifically denies the content of those documents.

Defendant further submits that the serious factual inaccuracies contained in the letter and attachment, together with Plaintiff's reason to know that his contract with the OCME might be terminated, suggest that the Plaintiff had no legitimate interest in calling matters of public concern to the Governor's attention. They further suggest that the inaccuracies may have been willful or malicious. (Affidavit of John J. Cronin and Exhibits thereto.)

**Plaintiff's Statement No. 8:** Dr. Philip had been requested to approve the harvesting procedure referred to in Paragraph 7, above, on or about January 30, 2004, but had declined to do so for medical and ethical reasons.

**Defendant's Response:** Defendant disputes the term "approve the harvesting procedure." Defendant further submits that, as noted above, Plaintiff's suggestion that the patient was not dead when organs were recovered is blatantly false; therefore, whatever Dr. Philip's reasons for refusing to approve the procurement of organs, Defendant disputes that those reasons were based upon professional medical practice or ethics. (Affidavit of Kevin J. O'Connor.)

**Plaintiff's Statement No. 9:** When Dr. Philip declined to authorize the removal of body parts from a person who was not yet dead, the persons who wanted to harvest the body parts obtained the authorization of Chief Medical Examiner Dr. Richard Evans to do so.

**Defendant's Response:** As discussed above, Defendant disputes that the person in question was not yet dead. Further, Defendant disputes Plaintiff's characterization of "the persons who wanted to harvest the body parts." Defendant concedes that Dr. Evans agreed to approve the recovery of organs from the deceased patient. (Affidavit of Kevin J. O'Connor.)

**Plaintiff's Statement No. 10:** Dr. Philip's second memo of March 2004 memo (sic) suggested that the removal of the body parts described above was not a good or appropriate procedure, and suggested a conference among appropriate personnel to discuss how such cases might be handled in the future.

**Defendant's Response:** Defendant concedes that Plaintiff wrote a second letter to the Governor on March 1, 2004, and that letter speaks for itself. However, as discussed in the Affidavit of Kevin J. O'Connor, the case referred to involved a young man whose family had decided to withdraw treatment and who had subsequently consented to organ donation; the ventilator was removed; the patient's heart stopped beating; and the patient was declared dead in accordance with the law prior to the recovery of any organs. (Affidavit of Kevin J. O'Connor.) Therefore, Defendant again disputes Plaintiff's allegations as to "the removal of the body parts described above."

To the extent Plaintiff intends to rely in any way upon the letter and attachment annexed to Plaintiff's Statement of Undisputed Facts as Exhibit 4, Defendant also specifically denies the content of those documents.

Defendant further submits that Exhibit 4 to Plaintiff's Statement of Undisputed Facts contain serious factual inaccuracies, and that those inaccuracies, together with Plaintiff's reason to know that his contract with the OCME might be terminated, suggest that the Plaintiff had no legitimate interest in calling matters of public concern to the Governor's attention. They further suggest that the inaccuracies may have been willful or malicious. (Affidavit of John J. Cronin and Exhibits thereto and Affidavit of Kevin J. O'Connor.)

**Plaintiff's Statement No. 13:** On March 3, 2004, Defendant-OCME fired the plaintiff by terminating his employment contract with the Office of Chief Medical Examiner.

**Defendant's Response:** Defendant submits that Plaintiff was a contract employee of the OCME; and that he was not "fired," but his contract was terminated. (Affidavit of John J. Cronin, Paragraph 10.)

**Plaintiff's Statement No. 14:** The letter terminating Dr. Philip expressly referred to the plaintiff's communications with members of the OCME and the district attorney's office as a reason for the plaintiff's termination.

**Plaintiff's Statement No. 15:** It is the plaintiff's contention that his employment was terminated, at least in part, in retaliation for his speech in the letters described above and attached as Exhibits 2 and 4.

**Defendant's Response to Plaintiff's Statements No. 14 and 15:** To the extent that Plaintiff appears to suggest in these two Statements that Exhibits 2 and 4 were the communications referred to in the letter terminating Dr. Philip's contract, such a suggestion is disputed by the Defendant. The communications at issue were Dr. Philip's inappropriate and unprofessional e-mail communications with Assistant District Attorney Lewis Armistead in connection with a case file and his communications with OCME General Counsel and John Cronin in connection with that same file. (Affidavit of John J, Cronin, Paragraphs 7-9 and Exhibits B and C thereto.) The Defendant further disputes that Plaintiff was terminated, as discussed above; and denies that

Plaintiff's contract was terminated on account of his having written Exhibits 2 and 4. (Affidavit of John J. Cronin, Paragraph 10.)

                                        Respectfully Submitted,
                                        COMMONWEALTH OF MASSACHUSETTS
                                        By its Attorneys,
                                        THOMAS F. REILLY
                                        ATTORNEY GENERAL

                                        /s/ Jean M. Kelley
                                        Jean M. Kelley, BBO #265540
                                        Assistant Attorney General
                                        Government Bureau/Trial Division
                                        One Ashburton Place, Room 1813
                                        Boston, MA 02108-1598
                                        (617) 727-2200 ext. 3327
                                        jean.kelley@ago.state.ma.us

June 23, 2005