UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MASSACHUSETTS

CIVIL ACTION: 04-CV-11069-JLT

ABRAHAM PHILIP, M.D.            )
    Plaintiff,              )
                            )
                            )
v.                              )
                            )
JOHN CRONIN,                    )
    Defendant.              )
                            )

**MEMORANDUM AND STATEMENT OF REASONS IN SUPPORT OF MOTION OF DEFENDANT JOHN CRONIN FOR SUMMARY JUDGMENT UNDER F.R.C.P. 56**

Now comes the Defendant John Cronin and moves, pursuant to F.R.C.P. 56, that this Court enter Summary Judgment in his favor with respect to all Counts of the Plaintiff's Amended Complaint.

**I.     SUMMARY JUDGMENT STANDARD**

Summary judgment should be granted where all of the relevant pleadings, viewed in the light most favorable to the non-moving party, present no genuine issue of material fact such that the moving party is entitled to judgment as a matter of law. Fed.R.Civ.P. 56(c); Alan Corp. v. International Surplus Lines Insurance Co., 22 F.3d 339, 342 (1st Cir.1994); Aponte-Santiago v. Lopez Rivera, 957 F.2d 40, 41 (1st Cir.1992); Medina-Munoz v. R.J. Reynolds Tobacco Co., 896 F.2d 5, 8 (1st Cir.1990); Griggs-Ryan v. Smith, 904 F.2d 112, 115 (1st Cir.1990).

I. **DEFENDANT IS ENTITLED TO JUDGMENT AS A MATTER OF LAW ON COUNT I WHERE PLAINTIFF HAS FAILED TO ESTABLISH THAT THE STATEMENTS AT ISSUE WERE WITH RESPECT TO "MATTERS OF PUBLIC CONCERN."**

For the reasons set out in Defendant's Opposition and Supplemental Opposition to Plaintiff's Motion for Partial Summary Judgment, Defendant submits that as a matter of law, Plaintiff's statements were not "matters of public concern" subject to First Amendment protection; and, therefore, Summary Judgment should enter in favor of the Defendant with respect to Count I of the Plaintiff's Amended Complaint.

II. **DEFENDANT IS ENTITLED TO JUDGMENT AS A MATTER OF LAW ON COUNT I WHERE PLAINTIFF HAS FAILED TO ESTABLISH A CAUSAL LINK BETWEEN THE ALLEGED PROTECTED EXPRESSION AND THE TERMINATION OF HIS EMPLOYMENT CONTRACT.**

Plaintiff here makes claim that his employment contract with the Commonwealth of Massachusetts was terminated in retaliation for Plaintiff's exercise of his First Amendment right to petition the Governor and other state officials. (Amended Complaint, Para. 41.) Here, the speech which Plaintiff alleges to be protected is contained in two letters to the Governor of the Commonwealth.[1] The first, dated March 1, 2004, is entitled "Re: Problems at the Office of Chief

---

[1] Plaintiff suggests in his Motion for Partial Summary Judgment that he had also made numerous suggestions to his supervisor John Cronin regarding improvements in the operation of the OCME. (See Plaintiff's Statement of Undisputed Facts, Para. 3). However, these do not appear to serve as a basis for Plaintiff's First Amendment claim (See Statement of Undisputed Facts, Para. 15: "It is the plaintiff's contention that his employment was terminated, at least in part, in retaliation for his speech in the letters described above and attached as Exhibits 2 and 4." In addition, the conversations with Cronin were internal communications between an employee and his supervisor; and nothing in Plaintiff's description of them indicates that they relate to "matters of public concern." Contrast with Torres-Rosado v. Rotger-Sabat et al., 335 F.3d 1, 12-13 (Plaintiff's internal memo to her superior suggesting that he was impeding a corruption investigation directly resulted in superior's opening of investigation into Plaintiff's conduct, which resulted in her termination.)

Medical Examiner (Plaintiff's Motion for Partial Summary Judgment, Exhibit 2); the second, also dated March 1, 2004, is entitled "Re: Organ Procurement: Procedures of Concern" (Plaintiff's Motion for Partial Summary Judgment, Exhibit 4).

Plaintiff asserts that copies of the two letters were provided to John Cronin and to the Chief Medical Examiner Dr. Richard Evans (Plaintiff's Statement of Undisputed Facts, Paras. 5 and 11); and that his employment contract was terminated on March 3, 2004. (Plaintiff's Statement of Undisputed Facts, Para. 13.) Nowhere does Plaintiff assert any causal link between the two letters and his termination. As a matter of law, therefore, his First Amendment claim must fail.

Where a plaintiff asserts retaliatory discharge in violation of the First Amendment, he must establish three elements to state a claim under Section 1983: (1) that the expressions which are alleged to have provoked the retaliatory action relate to matters of public concern; (2) that the alleged retaliatory action deprived him of some valuable benefit; and (3) that there was a causal relationship between the protected expression and the retaliatory action. Wagner v. Wheeler, 13 F.3d 86, 89 (4th Cir.1993). See also Mt. Healthy City School Dist. Bd. of Educ.v. Doyle, 429 U.S. 274, 287, 97 S.Ct. 568, 576 (1977); O'Connor v. Steeves, 994 F.2d 905, 917 (1st Cir.1993) (discussing the Mt. Healthy causation requirement).

As the First Circuit stated in Acevedo-Diaz v. Aponte:

> In a ... [First Amendment retaliation] case, plaintiffs must bear the threshold burden of producing sufficient direct or circumstantial evidence from which a jury reasonably may infer that plaintiff's constitutionally protected conduct ... was a 'substantial' or 'motivating' factor behind their dismissal. 1 F.3d 62, 66-67 (1st Cir.1993).

The First Circuit described the "substantial" or "motivating" factor test as a " 'but for' causation test." Id. at 66.

Plaintiff is not entitled to rely "solely on the temporal proximity of the protected statement to the alleged retaliatory conduct." Storlazzi v. Bakey, 894 F. Supp. 494, 503 (1995). Rather, he must "point to ... independent facts to support the allegation that his protected speech substantially motivated the [adverse decision]." Id. At 503. The Court in Storlazzi distinguished the First Circuit's vacating of a summary judgment in favor of the defendant in Jirau-Bernal v. Agrait, 37 F.3d 1, 3-4 (1st Cir.1994), where the plaintiff had produced direct evidence of discriminatory motivation from a third party affiant. Id. at 503. Rather, the Court looked to the First Circuit's decision in Kaufman v. Puerto Rico Telephone Co. et al., 841 F.2d 1169 (1st Cir. 1988), in which the court upheld summary judgment in favor of the defendants where the plaintiff's only evidence of discriminatory intent was the fact that employees who were affiliated with a different political party were not fired. Id. at 503. On that evidence the Kaufman court upheld the district court's conclusion that " the plaintiffs' political discrimination claims were based upon 'mere conclusory statements' that their firings were politically motivated and that the record was lacking any specific evidence 'to raise a question of fact that 'but for' political affiliation they would not have been dismissed.'" 841 F.2d at 1172. Indeed, where Plaintiff himself concedes that the relationship between the Plaintiff and Defendant Cronin had "deteriorated over time" prior to the series of events culminating in Plaintiff's termination (See Plaintiff's Amended Complaint, Para. 18), Defendant submits that Plaintiff is unable to establish that the termination related to the two letters at issue. See Rubinovitz v. Rogato, 60 F.3d 906 (1st Cir. 1995) (where plaintiffs had complained of earlier "harassment" by municipal officials, court affirmed summary judgment on First Amendment claim, holding that circumstantial evidence of temporal nexus is insufficient as a matter of law; and that "the inference suggested by the [plaintiffs] rests on a '"tenuous insinuation..."' Id. at 911, citing National Amusements, Inc. v.

Town of Dedham, 43 F.3d 731, 743 (1st Cir. 1995), cert. denied, 515 U.S. 1103, 115 S. Ct. 2247 (1995) (other cites omitted.)

In the instant case, as set out in Plaintiff's Amended Complaint and Plaintiff's Statement of Undisputed Facts, Plaintiff does nothing more than make conclusory allegations that he wrote two letters to the Governor and that he was subsequently terminated. As a matter of law, this does not constitute evidence "from which a jury reasonably may infer that plaintiff's constitutionally protected conduct ... was a 'substantial' or 'motivating' factor behind [his] dismissal"; and this court should therefore enter judgment against the Plaintiff with respect to Count I of the Amended Complaint for violation of the First Amendment.

### III. DEFENDANT IS ENTITLED TO JUDGMENT AS A MATTER OF LAW ON COUNT I WHERE DEFENDANT HAS DEMONSTRATED THAT THE DECISION TO TERMINATE PLAINTIFF'S CONTRACT WOULD HAVE BEEN THE SAME REGARDLESS OF PLAINTIFF'S ALLEGEDLY PROTECTED SPEECH

In addition to the Plaintiff's failure to establish a causal link between the expression of his allegedly protected speech and the termination of his employment contract, the Plaintiff's claims under the First Amendment should also be dismissed because the Defendant has provided a legitimate justification for the termination of that contract. Mt. Healthy, supra at 287, 97 S.Ct. at 576. As the First Circuit stated in Acevedo-Diaz:

> [T]he defendant-employer's *Mt. Healthy* defense, ensures that a plaintiff-employee who would have been dismissed in any event on legitimate grounds is not placed in a better position merely by virtue of the exercise of a constitutional right irrelevant to the adverse employment action. 1 F.3d at 66 (internal quotations omitted). (cited in Storlazzi, supra, at 503.)

Here, as set out in Defendant's Statement of Undisputed Facts, Defendant was justified in terminating Plaintiff's employment contract, based upon Plaintiff's inappropriate, unprofessional conduct relating to two separate incidents: first, the incident in which he, at the least, permitted a

staff person at the OCME to be exposed to potentially dangerous blood products; and, second, the series of incidents involving his unprofessional comments to an Assistant District Attorney in the context of an ongoing homicide investigation, as well as his unprofessional handling of the file in that matter. The decision to terminate Dr. Philip's contract would have been made, whether or not he communicated with the Governor. He should not be put in a better position because of those communications than he otherwise would have been.

IV. **DEFENDANT IS ENTITLED TO SUMMARY JUDGMENT ON COUNT II WHERE DEFENDANT WAS ACTING AS AN AGENT OF THE COMMONWEALTH IN PARTICIPATING IN THE DECISION TO TERMINATE PLAINTIFF'S CONTRACT; AND WHERE PLAINTIFF HAS NOT DEMONSTRATED ACTUAL MALICE ON THE PART OF THE DEFENDANT.**

Plaintiff brings Count II in Intentional Interference with Contractual Relations Under State Law, alleging that Defendant Cronin intentionally interfered with Plaintiff's contract of employment with the Commonwealth. It is axiomatic that under Massachusetts law "a defendant-supervisor is entitled to a qualified privilege in an employment-based tortious interference case (and, thus, will not be liable for employment decisions that are within the scope of his supervisory duties)." Zimmerman v. Direct Federal Credit Union et al., 262 F.3d 70, 76 (1st Cir. 2001), citing Gram v. Liberty Mut. Ins. Co., 384 Mass. 659, 429 N.E.2d 21, 24 (1981). However, as noted by the Zimmerman court, "[T]he privilege is not sacrosanct. Massachusetts treats proof of actual malice as a proxy for proof that a supervisor was not acting on the employer's behalf, and deems such proof sufficient to overcome the qualified privilege." Id. at 76. The court then chronicles the limitations and restrictions which must be overcome in order for a plaintiff in an employment case to establish the element of malice sufficient to withstand dismissal:

Proof of actual malice requires more than a showing of mere hostility. See King v. Driscoll, 418 Mass. 576, 638 N.E.2d 488, 495 (1994) (explaining that "personal dislike will not warrant an inference of the requisite ill will"). For one thing, the plaintiff must prove that malice was the controlling factor in the supervisor's interference. Alba v. Sampson, 427 Mass. 1104, 44 Mass.App.Ct. 311, 690 N.E.2d 1240, 1243 (1998). For another thing, "[a]ny reasonable inference of malice must ... be based on probabilities rather than possibilities." Gram, 429 N.E.2d at 24-25 (citation omitted). Finally, such an inference requires an affirmative showing that the actions taken by the supervisor were not derived from a desire to advance the employer's legitimate business interests. Boothby v. Texon, Inc., 414 Mass. 468, 608 N.E.2d 1028, 1040 (1993); Alba, 690 N.E.2d at 1243.

Defendant submits that, based upon the facts set forth in Defendant's Statement of Undisputed Facts, and upon the arguments set out above, Plaintiff has not demonstrated malice on the part of the Defendant Cronin such as would permit Plaintiff to proceed with Count II of the Amended Complaint; and this Court should enter summary judgment in favor of the Defendant with respect to that Count.

**V. AS A MATTER OF LAW, THE FACTS ALLEGED IN COUNT III OF PLAINTIFF'S AMENDED COMPLAINT DO NOT SUPPORT A CLAIM FOR INTENTIONAL INFLICTION OF EMOTIONAL DISTRESS; AND THIS COURT SHOULD ENTER SUMMARY JUDGMENT IN FAVOR OF THE DEFENDANT WITH RESPECT TO THAT COUNT**

In order to recover for intentional infliction of emotional distress in Massachusetts, a plaintiff must establish four elements of that tort:

> It must be shown (1) that the actor intended to inflict emotional distress or that he knew or should have known that emotional distress was the likely result of his conduct, Restatement (Second) of Torts s 46, comment i (1965); Savage v. Boies, 77 Ariz. 355, 272 P.2d 349 (1954); Samms v. Eccles, 11 Utah 2d 289, 293, 358 P.2d 344 (1961); (2) that the conduct was 'extreme and outrageous,' was 'beyond all possible bounds of decency' and was 'utterly intolerable in a civilized community,' Restatement (Second) of Torts s 46, comment d (1965); George v. Jordan Marsh Co., 359 Mass. 244, 254--255, 268 N.E.2d 915 (1971); (3) that the actions of the defendant were the cause of the plaintiff's distress, Spackman v.

> Good, 245 Cal.App.2d 518, 54 Cal.Rptr. 78 (1966); Womack v. Eldridge, 215 Va. 338, 341, 210 S.E.2d 145 (1974); and (4) that the emotional distress sustained by the plaintiff was 'severe' and of a nature 'that no reasonable man could be expected to endure it.' Restatement (Second) of Torts s 46, comment j (1965); Womack v. Eldridge, supra. Agis v. Howard Johnson Co., 371 Mass. 140, 144-145, 355 N.E.2d 315 (1976).

In the seminal Agis case, the Court found that the Plaintiff had presented a sufficient claim where the Plaintiff alleged that the Defendant Employer had indicated a concern that employees were stealing from the Employer; the identity of the person or persons was unknown; the Employer advised that until the responsible persons were discovered, he would begin to fire employees in alphabetical order, beginning with "A;" Plaintiff Agis was then fired. Similarly, in Bowman v. Heller, 420 Mass. 517, 651 N.E.2d 369 (1995), the Court found no error in the trial court's finding of intentional and reckless infliction of emotional distress. In that case Plaintiff was a sixty-year-old female supervisor at the Department of Public Welfare who was campaigning for union president. The Defendant was a co-worker who supported the incumbent president. Defendant created and distributed to other co-workers two photographs in which he had superimposed the Plaintiff's face on photos from pornographic magazines. One of the photos depicted a model who was "nude from the waist down, except for garters, and...posed toward the camera with her legs wide apart as she holds a banana next to her exposed breast." The other depicted a model who was "entirely naked, and appear[ed] to be engaged in masturbation." 420 Mass. at 520.

In Agis the Supreme Judicial Court acknowledged a long-standing concern that fraudulent or frivolous claims might be encouraged if plaintiffs were permitted to recover for infliction of emotional distress, even in the absence of physical injury. See Agis, supra, at 143-144. The Agis Court rejected such reasoning, but acknowledged that difficulties in proof were

possible. On this basis, the Court held that recovery would be permitted, but only upon a finding of the extreme and outrageous conduct described above:

> We are thus unwilling to deny the existence of this cause of action merely because there may be difficulties of proof. Instead, we believe 'the door to recovery should be opened but narrowly and with due caution.' Id., at 144. (cites omitted.)

Indeed, there can be no recovery for this tort even in instances where the conduct might be found to have been criminal or where, in other contexts, a plaintiff might have been able to recover punitive damages:

> Liability cannot be predicated on " 'mere insults, indignities, threats, annoyances, petty oppressions or other trivialities' nor even is it enough 'that the defendant has acted with an intent which is tortious or even criminal, or that he has intended to inflict emotional distress, or even that his conduct has been characterized by "malice" or a degree of aggravation which would entitle the plaintiff to punitive damages for another tort.' " Foley v. Polaroid Corp., 400 Mass. 82, 99, 508 N.E.2d 72 (1987), quoting Restatement (Second) of Torts §§ 46 comment d (1965). Tetrault v. Mahoney, Hawkes & Goldings, 425 Mass. 456, 466, 681 N.E.2d 1189 (1997).

Even conduct that is found to violate a plaintiff's civil rights "'does not, in and of itself, necessitate a finding that the conduct is sufficiently egregious to state a claim for intentional infliction of emotional distress.'" Edsall v. Assumption College, 367 F. Supp. 2d 72, 80 (D. Mass. 2005) (citing Guckenberger v. Boston Univ., 957 F. Supp. 306, 319 (D. Mass.1997)). (citing Marques v. Fitzgerald, 99 F.3d 1, 6-7 (1st Cir. 1996)). See also Sinai v. New England Tel. & Tel. Co., 1990 WL 150015 (D. Mass. 1990) (Court held that case could go forward on Plaintiff's claims under Title VII and Section 1981, but found as a matter of law that Defendant's repeated denials of plaintiff's application of employment may have been discriminatory, but were not "utterly intolerable in a civilized community" so as to serve as a basis for a claim Id., at 5).

In the present case, the conduct upon which Plaintiff relies in asserting a claim for

Intentional Infliction is described in Paragraph 57 of Plaintiff's Amended Complaint:

> In firing Dr. Philip in retaliation for speech, Defendant-Cronin intended to inflict emotional distress or knew or should have known that emotional distress was the likely result of his conduct.

As discussed above, the Plaintiff is unable even to establish that he was "fired" on account of his speech. However, even assuming that he were able to meet that burden, it is unquestionable that the alleged conduct does not in any way rise to the level of the conduct deemed in Agis or Bowman to be "extreme and outrageous," "beyond all possible bounds of decency," and "utterly intolerable in a civilized community." As a matter of law, this Court should enter summary judgment in favor of the Defendant with respect to Plaintiff's Count III claim for Intentional Infliction of Emotional Distress.

## CONCLUSION

For the foregoing reasons, Defendant John Cronin respectfully requests that this Court enter summary judgment in his favor with respect to all Counts of the Plaintiff's Amended Complaint.

Respectfully Submitted,
DEFENDANT JOHN CRONIN,
By his Attorneys,
THOMAS F. REILLY
ATTORNEY GENERAL

_____
Jean M. Kelley, BBO #265540
Assistant Attorney General
Office of The Attorney General
Government Bureau/Trial Division
One Ashburton Place, Room 1813
Boston, MA 02108
(617) 727-2200 x 3327
**jean.kelley@ago.state.ma.us**

V.