UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MASSACHUSETTS

CIVIL ACTION: 04-CV-11069-JLT

|  |  |
|---|---|
| ABRAHAM PHILIP, MD | ) |
| Plaintiff, | ) |
| vs. | ) |
| JOHN CRONIN, in his personal capacity. | ) |
| Defendant. | ) |

## STATEMENT OF UNDISPUTED FACTS OF DEFENDANT JOHN CRONIN IN SUPPORT OF MOTION FOR SUMMARY JUDGMENT UNDER F.R.C.P. 56

Now comes the Defendant John Cronin and hereby submits that the following are facts as to which there will be no dispute:

1. On February 20, 2004, the Defendant John Cronin, was informed that a funeral home representative had requested that a medical examiner sign a death certificate. An administrative assistant of the OCME spoke to the Defendant regarding the funeral home representative's request, and the Defendant requested that she attempt to locate Plaintiff Dr. Philip. (Affidavit of John Cronin, attached to Defendant's Opposition to Plaintiff's Motion for Partial Summary Judgement as Exhibit 1 ( hereinafter, "Cronin Affidavit"), Para 2.)

1

2. The administrative assistant returned and said that she had asked Dr. Philip to sign the death certificate. Defendant was then informed that Dr. Philip had said that he could not sign it at that time and that he had requested that the funeral home representative wait for approximately one hour. Defendant then requested that the administrative assistant's supervisor approach Dr. Philip to request that he sign the death certificate in a manner that was not disruptive of his work. (Cronin Affidavit, Para.2.)

3. Defendant was advised by the accounts of several witnesses that the supervisor went down to the anteroom of the autopsy suite; and that as a result of her interaction with Dr. Philip, she received from him the death certificate which she discovered had been covered in blood. (Cronin Affidavit, Para. 3.)

4. The administrative supervisor reported the above interaction to the Defendant. Defendant then spoke with Dr. Richard Evans, who was the Chief Medical Examiner of the OCME, and described what had occurred. Dr. Evans indicated his shock and surprise. (Cronin Affidavit, Para.4.)

5. Defendant next requested that the Director of Technical Services and the Manager of Administrative Services identify the witnesses to the event and obtain written statements from the appropriate parties; and Defendant received four written statements. (Cronin Affidavit, Para.5.)

6. Defendant then discussed the incident with Dr. Evans, General Counsel Jackie Faherty, Human Resources Director Denise Sarro and with senior managers at the Executive Office of Public Safety, including Undersecretary Robert Haas and Chief of Staff Jane

Tewksbury. (Cronin Affidavit, Para. 5.)

7. As a result of the discussions described in paragraph 6, Ms. Sarro prepared a first draft of a letter of suspension of Dr. Philip. After further review and discussion among the Defendant, Ms. Sarro, Ms. Faherty and Dr. Evans; the letter was finalized, signed and delivered to Dr. Philip. A copy of the letter is attached hereto as Exhibit A. (Cronin Affidavit, Para. 6.)

8. On March 1, 2004, Defendant became aware of another incident involving Dr. Philip. In connection with a case on which he was working, he had communicated with an attorney from the District Attorney's office in an inappropriate and unprofessional manner. A copy of his email communication is attached hereto as Exhibit B. (Cronin Affidavit, Para. 7.)

9. In addition, over the course of that evening and the next day, Defendant became aware of further inappropriate communications relating to that file between Dr. Philip and the OCME General Counsel. Copies of the email communications between Dr. Philip and the General Counsel are attached hereto as Exhibit C. (Cronin Affidavit, Para. 8.)

10. On March 2, 2004 it came to Defendant's attention that the General Counsel had left a file on Dr. Philip's chair for completion. Dr. Philip responded to the General Counsel via e-mails, attached hereto as Exhibit D. The General Counsel brought copies of the e-mails to the Defendant's office. Defendant considered the e-mails inappropriate and was concerned that the work would not be completed. Defendant then took the file to Dr. Philip's office and placed it on his desk. Dr. Philip screamed at Defendant about the circumstances under which he would work on the case. Defendant told him to finish the case, that it was his job. (Cronin Affidavit, Para. 9.)

11.   In connection with all of the conduct of Dr. Philip on March 1 and 2, Defendant met with a number of people including Dr. Evans, the General Counsel, the Chief of Staff of the Executive Office of Public Safety, the HR director for the OCME, the HR director for the Executive Office of Public Safety and Undersecretary Robert Haas. They discussed their concerns regarding Dr. Philip's conduct on March 1 and 2, 2004; as well as their concerns regarding the events that had resulted in Defendant's February 25, 2005 letter of suspension to Dr. Philip. (Cronin Affidavit, Para. 10.)

12.   Based upon the discussions described in paragraph 11, it was agreed that Dr. Philip's service contract would be terminated. The decision to terminate Dr. Philip's contract was in no way related to letters written by Dr. Philip to the Governor of Massachusetts. (Cronin Affidavit, Para. 10.)

13.   Attached hereto as Exhibit E is Defendant's letter to Dr. Philip of March 3, 2004 terminating his contract. Dr. Evans reviewed and approved the letter before it was finalized. (Cronin Affidavit, Para. 11.)

>Respectfully Submitted,
>DEFENDANT JOHN CRONIN,
>By his attorneys,
>THOMAS F. REILLY
>ATTORNEY GENERAL
>
>_____
>Jean M. Kelley, BBO #265540
>Assistant Attorney General
>Office of The Attorney General
>One Ashburton Place, Room 1813
>Boston, MA 02108
>(617) 727-2200 x 3327
>**jean.kelley@ago.state.ma.us**