## AFFIDAVIT OF KEVIN J. O'CONNOR

I, Kevin J. O'Connor, have been the Director of Donation Services for the New England Organ Bank, Inc. (NEOB) for over 15 years, with responsibility for all NEOB organ donation activities. NEOB is a federally designated organ procurement organization responsible for coordinating organ donations for transplant in all of the New England states. I hold a B.S. in Health Science, an M.S. in Administration, and I am a Physician Assistant with over three years of experience in cardiothoracic surgery, and over 20 years experience in organ donation.

Specific to the issues present in this case, I have worked with 12 major New England hospitals to develop Donation after Cardiac Death (DCD) policies consistent with applicable state regulations and national standards of practice developed by the Institute of Medicine. I have been physically present and participated in all aspects of numerous DCD donations that NEOB has coordinated over the past ten years. I have served on the United Network for Organ Sharing (UNOS) Donation after Cardiac Death Clinical Pathway Development Committee, and I currently serve as a national DCD mentor under the auspices of UNOS. I have served as Co-Chair of the Association for Organ Procurement Organizations (AOPO) Technical Assistance Program where I developed a specialized program to help other organ banks develop DCD programs.

In 2003, I was appointed to serve as a faculty member and designated as a national DCD expert for the Dept. of Health and Human Services (DHHS) Organ Donation Breakthrough Collaborative. More recently, I was appointed to serve as Co-Director of the Organ Transplantation Breakthrough Collaborative, a DHHS funded program, with a specific charge from the federal government to increase the rate of DCD donation nationwide from its current level of 5% to over 10%. I have co-authored over 20 papers and on organ donation, including DCD, published in peer reviewed journals, including the New England Journal of Medicine and the Journal of the American Medical Association. I have been an invited speaker on DCD and other organ donation related topics to over 10 national medical conferences in the past three years. In May of 2005, I was awarded a DHHS Medal of Honor for my work on the national level as a faculty member for the Organ Donation Breakthrough Collaborative, with a special focus on DCD.

The organ donation case at issue in the matter referred to in Paragraph 6 of Plaintiff's Statement of Undisputed Facts involved Donation after Cardiac Death. DCD is an accepted donation practice, endorsed by the National Institute of Medicine as well as the Advisory Counsel on Organ Transplantation to Secretary Thompson, the Society for Critical Care Medicine, UNOS and numerous other professional associations. DCD is vital to the transplant community in the United States. Last year alone, 38 DCD donors in the New England area resulted in 75 organ transplants. Nationally, in 2004 there were 389 DCD donors resulting in over 700 potentially life-saving organ transplants.

One clear and undisputable fact is that DCD involves recovery of organs from individuals <u>after</u> they have been declared dead in accordance with the law. More specifically, DCD refers to the circumstance when a person becomes a donor after dying from permanent cessation of cardiac and pulmonary function; the heart stops beating. The law in every state recognizes that death may be declared when there is either (1) irreversible cessation of circulatory and respiratory functions or (2) irreversible cessation of all functions of the entire brain, including brain stem.

Organ donation is not as common after death from permanent cessation of cardiac and pulmonary function because organs rapidly become unsuitable for transplantation. However, this is where organ donation began 40 years ago, before the legal acceptance of declaring death by brain criteria. The vast majority of people who die are declared dead on the basis of permanent cessation of cardiac and pulmonary function rather than by brain death criteria. Moreover, the law is clear that when cessation of circulatory and respiratory function is only delayed by means of artificial ventilation, removal of that support (either at the patient's or the family's direction) is never viewed as a criminal act or the least bit improper.

In instances when a patient suffers a non-survivable injury and for whom there is no hope of recovery, families sometimes decide to withdraw treatment. Once the decision to withdraw futile treatment has been made, the option of donating organs after the patient dies from permanent cessation of cardiac and pulmonary function may be given to or requested by these families. Donation in such cases is in accordance with established DCD clinical protocols and entails taking the patient off the ventilator, typically in the operating room. After the patient's heart stops beating, the physician declares the patient dead in accordance with clinical practice and the law. Only after death is declared does the organ recovery process begin. NEOB has never recovered organs from patients who remain in a persistent vegetative state or are otherwise not legally dead.

In all DCD cases under the jurisdiction of the Massachusetts Medical Examiner's Office, the Medical Examiner's decision with respect to restriction of a donation must be communicated prior to the pronouncement of death because there is a critically short period of time to coordinate recovery of viable organs. For this reason, NEOB informs the Medical Examiner's Office of a potential DCD in advance of death.

I also have personal, first hand knowledge of the events that occurred on 1/30/04 related to organ donation of a young man that took place at a Boston area hospital that is the subject of a Memorandum authored by Dr. Abraham T. Philip. As part of my personal involvement in this case, I had opportunity to review the medical records of the donor and am aware of the DCD protocol at the hospital where the donation at question occurred. This particular organ donor case was a standard DCD case: the family decided to withdraw treatment and subsequently consented to organ donation; the ventilator was removed; the patient's heart stopped beating; and the patient was declared dead in accordance with the law prior to the recovery of any organs as documented in the patient's medical record. In summary, the donation occurred in compliance with established protocol.

To the best of my personal knowledge of this donation case, I absolutely dispute the statements made in Paragraph 6 and 9 of the Plaintiff's Statement of Undisputed Facts that the case was one in which "body parts had been harvested . . . before the victim was brain dead" or involved a request that Dr. Philip approve "the removal of body parts from a person who was not yet dead." Nor was this patient in a "persistent vegetative state" – as is most obvious from the fact that the patient's heart stopped beating after ventilator support was withdraw. By medical definition, if the patient had been in a persistent vegetative state, his heart would not have stopped beating after withdrawal of the ventilator.

The statements about the donation being presented in Plaintiff's Statement of Undisputed Facts, lack any evidentiary support and fly in the face of the irrefutably established medical and legal principles.

I, Kevin O'Connor, sign this document and swear to its veracity under the pains and penalties of perjury as of this 23 day of June, 2005.

_____
Kevin J. O'Connor, PA, MS, CPTC