1

Volume: 1
Pages: 1 to 99
Exhibits: See Index

UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MASSACHUSETTS
C.A. No. 04-CV-11069-JLT

ABRAHAM PHILIP, M.D.,           )
        Plaintiff             )
                                )
                                )
vs.                             )
                                )
                                )
JOHN CRONIN, in his personal    )
capacity,                       )
        Defendant             )

DEPOSITION of JOHN CRONIN, a witness called on behalf of the Plaintiff, pursuant to the applicable provisions of the Federal Rules of Civil Procedure, before Judith R. Sidel, Professional Court Reporter and Notary Public, in and for the Commonwealth of Massachusetts, at the Office of the Chief Medical Examiner, 720 Albany Street, Boston, Massachusetts 02118, on Wednesday, June 22, 2005, commencing at 10:10 a.m.

APPEARANCES: (Continued on page 2)

\* \* \* \*

SIDEL COURT REPORTING SERVICES
Certified Shorthand Reporters
35 Tudor Road
Needham, Massachusetts 02492
(781) 449-2351

PLAINTIFF'S EXHIBIT
6

```
 1        located in the administrative pool of
 2        our office.  I can't recall actually the
 3        exact time when it was handed to me, but
 4        it was certainly within a day of receipt,
 5        I assure you of that.
 6   Q.   Now, were either of these letters
 7        discussed at all during your
 8        collaboration on the letter of
 9        termination to be sent to Dr. Philip?
10   A.   Yes, sir.
11   Q.   Do you recall which of those letters
12        was discussed during your collaboration
13        about the termination letter to be sent
14        to
15        Dr. Philip?
16   A.   As I mentioned earlier in my testimony,
17        the meeting held with members of the
18        executive office and medical examiner
19        staff discussed that these particular
20        pieces of correspondence had been
21        received by our office.  The essence of
22        our discussion was simply, one, first
23        on the matter of Exhibit 5 and 6 that
24        what appear to be Dr. Philip's detailed
```

| | |
|---|---|
| 1 | description of problems at the Office of |
| 2 | the Chief Medical Examiner was largely |
| 3 | redundant and and/or rhetorical up to |
| 4 | three commissioned audit and review |
| 5 | reports that the agency had received in |
| 6 | the last several years. |
| 7 | And that the matter of Exhibit |
| 8 | No. 7, which apparently arrived a day or |
| 9 | so later, was a product of Dr. Philip's |
| 10 | opinion on the medical procedure |
| 11 | involving a case that had processed |
| 12 | through our system, and I recall in that |
| 13 | discussion, Attorney Sharp, that folks |
| 14 | were informed that it was identical to |
| 15 | an e-mail that Dr. Philip had sent out |
| 16 | to our medical examiner staff several |
| 17 | days or weeks prior to apparently sending |
| 18 | it to Governor Romney.  We were concerned |
| 19 | also that Dr. Philip had potentially |
| 20 | discussed or had written about a case, |
| 21 | and I'm not quite certain at the time |
| 22 | if the name had been redacted on its |
| 23 | deliverance to us and/or the Governor, |
| 24 | and we were concerned the confidentiality |