UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MASSACHUSETTS

CIVIL ACTION: 04-CV-11069-JLT

_____
                                              )
ABRAHAM PHILIP, MD                            )
                                              )
         Plaintiff,                           )
                                              )
vs.                                           )
                                              )
JOHN CRONIN, in his personal                  )
capacity.                                     )
                                              )
         Defendant.                           )
_____)

PLAINTIFF'S REQUESTED JURY INSTRUCTIONS

PART 1: FIRST AMENDMENT VIOLATION

GENERAL INSTRUCTION ON RETALIATION CLAIM

         The plaintiff alleges that the defendant deprived him of his right to free speech under
the First Amendment to the Constitution of the United States. Specifically, the plaintiff
alleges that: (1) while working as a contract employee for the Office of the Chief Medical
Examiner, he engaged in one or more specific actions of speech protected by the free speech
clause of the First Amendment; (2) that the defendant then terminated him; and (3) that the
plaintiff's acts of speech were the substantial or motivating factor in the defendant's decision
to terminate him.
         In order to prove his claim against the defendant, the plaintiff must establish the
following two elements of his claim: First, that he engaged in speech protected by the free
speech clause of the First Amendment; and, second, that these acts of speech were a
substantial or motivating factor in the defendant's decision to terminate his employment.
         Let's turn to the first element. The question of whether a public employee's particular
speech is protected by the First Amendment is a question of law for me to decide.  In this
case, I have decided as a matter of law that the plaintiff's speech on the following matters
was protected by the First Amendment because they involved matters of public concern:
speech in the form of letters written to the Governor concerning what he considered to be

poor practices and procedures at the Office of the Chief Medical Examiner and speech in the form of a letter to the Governor concerning the procedure of organ harvesting that was used in the case of a young man named Joshua. I also find, as a matter of law, that much of the Plaintiff's speech within the Office of the Chief Medical Examiner was protected by the First Amendment. This would include the memo that he wrote about "Problems at the OCME" and the memo that he wrote about the young man named Joshua. This would also include _____.

Protected speech may be either written or oral. Some of the plaintiff's protected speech is contained in written statements. For example, the plaintiff's memorandum regarding "Problems at the OCME" and his memo about the young man named Joshua are an examples of a written statement containing protected speech.

In addition, witnesses have testified about the existence or nonexistence of oral complaints by the plaintiff that are within the categories of protected speech that I have described to you. With regard to these alleged oral statements by the plaintiff, you must determine whether the plaintiff actually made the oral complaints about the alleged bad practices of the OCME before you can consider whether or not the defendants took action against him for exercising his First Amendment right of free speech.

You must determine, therefore, whether the plaintiff, in fact, made certain types of complaints that are within the two categories of protected speech that I have described to you. If he did make these complaints, then you must turn to the second element of plaintiff's claim. I am instructing you that the Plaintiff did write to the Governor the memos or letters I have described.

The second element requires the plaintiff to show that at least some of his protected speech was a substantial or motivating factor in a defendant's decision to terminate his employment. The plaintiff's protected speech was a substantial or motivating factor in a defendant's decision if it played a substantial role in a defendant's decision to terminate the plaintiff's employment.

A defendant may have taken action against the plaintiff for only one reason. If that one reason was that the plaintiff engaged in protected speech, you must find that the plaintiff's speech was a substantial or motivating factor in that defendant's decision to terminate the plaintiff's employment.

A defendant may have taken action against the plaintiff for a combination of different reasons. If so, you must determine whether one of those reasons was that the plaintiff engaged in protected speech. If this was one of those reasons, then you must decide whether plaintiff's exercise of his free speech rights played a substantial role in the decision to terminate the plaintiff. If it did play a substantial role in a defendant's decision to terminate the plaintiff, then you must find that the plaintiff's protected speech was a substantial or motivating factor in the defendant's decision. If the plaintiff has failed to prove this element by a preponderance of the evidence, then you will find for the defendant.

The mere fact that the plaintiff was discharged does not establish his First Amendment claim, even though you may feel that the discharge was unwarranted or unreasonable. In order for the plaintiff to prevail on his claim, you must find that his protected speech was a substantial or motivating factor in a defendant's decision to discharge him from his employment.

The plaintiff is not required to produce direct proof of unlawful motive, intent or design. A motive, intent, or design to violate a person's constitutional rights, if it exists, is

seldom admitted directly and, if it exists, may be shown from the existence of other facts. The law does not distinguish between direct and circumstantial evidence.

If the plaintiff proved by a preponderance of the evidence that his protected speech was a substantial or motivating factor in a defendant's decision to take harmful action against him, you must then consider whether the defendant has presented an adequate defense. The defendant presents an adequate defense to the plaintiff's case if the defendant shows, by a preponderance of the evidence, that he would have terminated the plaintiff's employment, even in the absence of the plaintiff's speech. A defendant must show by a preponderance of the evidence that he would have made the same decision to terminate the plaintiff even if he had not considered the plaintiff's protected speech.

In sum, if a defendant shows by a preponderance of the evidence that he would have reached the same decision to terminate the plaintiff without considering the plaintiff's protected speech, then you must find in favor of that defendant on the plaintiff's claim that the defendant deprived him of his constitutional right under the First Amendment.

Section 1983 Litigation, Jury Instructions, V.4, Schwartz & Pratt. Adapted from Rao v. New York City Health and Josps. Corp., S.D.N.Y. 89 Civ. 2700 (Judge John G. Koeltl.)

PROXIMITY IN TIME IS EVIDENCE OF RETALIATION

I have already instructed you that Dr. Philip engaged in protected speech, this is, speech on a matter of public concern.  The proximity in time between the protected speech and the alleged retaliation is circumstantial evidence of a bad motive on the part of Mr. Cronin.  "Close temporal proximity between two events may give rise to an inference of causal connection." Hodgens v. Gen. Dynamics Corp., 144 F.3d 151, 168 (1st Cir. 1998).

Authority: Ulrich v. City and County of San Francisco, 308 F.3d 968, 980 (9th Cir. 2002); Pike v. Osborne, 301 F.3d 182, 185 (4th Cir. 2002); Lewis v. City of Boston, 321 F.3d 207, 219 (1st Cir. 2003). (See, Beliveau v. United States DOL, 170 F.3d 83, 87 (1st Cir. 1999) ("[U]niform holdings in cases that involve claimed retaliatory actions by employers that temporal proximity is an important component (in fact, often the most persuasive factor) in the employee's required proof of a causal relationship between his or her statutorily protected conduct and the employer's asserted retaliation.") (citing cases.)

<u>DEFENDANT'S BURDEN TO PROVE ITS DEFENSE</u>

If you find that the plaintiff's protected speech (or act of expression) was a substantial or motivating factor in the defendant's decision to take action against the plaintiff, you must consider whether the defendant has presented an adequate defense to the plaintiff's case.

The defendant presents an adequate defense to the plaintiff's case if the defendant can show, by a preponderance of the evidence, that it would have reached the same decision to take action against the plaintiff even in the absence of the plaintiff's protected speech. In other words, the defendant must show by a preponderance of the evidence that it would have made the same decision without considering the plaintiff's protected speech.

If the defendant shows by a preponderance of the evidence that it would have reached the same decision without considering the plaintiff's protected speech, then you must find in favor of the defendant.

It is important for you to realize that the defendant has not presented an adequate defense if it shows merely that it had other, valid reasons for taking action against the plaintiff. It is a defense only if the defendant would have acted on those other reasons in the absence of the plaintiff's protected speech. Therefore, if the defendant offers other, valid reasons for taking action against the plaintiff, the defendant must further show that it would have acted on those reasons. Otherwise, it has not presented an adequate defense.

Authority: 5 L. Sand et al., Modern Federal Jury Instructions 87-284 (Matthew Bender 2000). Instruction found at <u>Sanchez-Lopez v. Fuentes-Pujols</u>, 375 F.3d 121, 137 (1st Cir. 2004). (<u>See</u>, <u>Guilloty Perez v. Pierluisi</u>, 339 F.3d 43 (1st Cir. 2003):

> The Mt. Healthy causation test is a burden-shifting test. If the plaintiff succeeds in establishing this causal relationship, <u>the burden of persuasion shifts to the defendants</u> to prove "by a preponderance of the evidence," id., that the adverse employment action would have been taken "even in the absence of the protected conduct," Mt. Healthy, 429 U.S. at 287.
>
> <u>Guilloty</u>, at 56.

PART 2: INTENTIONAL INTERFERENCE WITH CONTRACTUAL RELATIONS

The plaintiff claims in this case that it had a contract with XYZ Company, and that the defendant improperly interfered with XYZ Company's performance of its obligations under this contract.  In order to prevail on this claim of improper interference with a contractual relationship, the plaintiff must prove by a preponderance of the evidence that:
1. the plaintiff had a binding contract with XYZ Company;
2. the defendant knew about the contract and intentionally induced or persuaded XYZ Company not to perform its obligations under the contract;
3. the defendant's interference with XYZ's performance of its obligations under th contract, in addition to being intentional, was improper in motive or in means;
4. the plaintiff was harmed by the defendant's actions.  n1

Practice Note
While this instruction was drafted for interference with a corporate contract, interference claims may certainly involve contracts with individuals.

FOOTNOTES:

n1 King v. Driscoll, 418 Mass. 576, 587, 638 N.E.2d 488, 494--95 (1994); S.C., 424 Mass. 1, 673 N.E.2d 859 (1996); G.S. Enters., Inc. v. Falmouth Marine, Inc., 410 Mass. 262, 571 N.E.2d 1363 (1991); United Truck Leasing Corp. v. Geltman, 406 Mass. 811, 551 N.E.2d 20 (1990). See also Chemewa County Gold, Inc. v. Wnuk, 9 Mass.App.Ct. 506, 509, 402 N.E.2d 1069, 1072 (1980) ("in its classic form, the tort . . . involves the undoing of a business arrangement bound by contract."). See also Shea v. Emmanuel College, 425 Mass. 761, 764, 682 N.E.2d 1348, 1357 (1997) (relying on King v. Driscoll, 418 Mass. 576, 587, 638 N.E.2d 488, 494--95 (1994), S.C., 424 Mass. 1, 673 N.E.2d 859 (1996)).

From: Massachusetts Superior Court Civil Pattern Jury Instructions  § 12.4.1

PART 3: INTENTIONAL INFLICTION OF EMOTIONAL DISTRESS

In this case, the plaintiff is claiming that the defendant intentionally or recklessly caused infliction of emotional distress when [insert party's factual contentions]. In order to recover, the plaintiff must prove by a preponderance of the evidence that:

1. the defendant intended to inflict emotional distress or that the defendant, knew or should have known that emotional distress was likely to result from [his/her] conduct;

2. the defendant's conduct was extreme and outrageous, was beyond all possible bounds of decency and was utterly intolerable in a civilized community;

3. the defendant's conduct caused the plaintiff's emotional distress, and

4. the emotional distress suffered was severe and of a nature that no reasonable person could be expected to endure it.  n1

It is not necessary for the plaintiff to prove that physical injury resulted from the severe emotional distress.  n2

Practice Note
The claim of intentional infliction of emotional distress often arises in cases of wrongful termination. However, § 24 of the Workers' Compensation Act, G.L. c. 152, bars an employee from bringing an action for an intentional tort against a fellow employee, unless the fellow employee was in no way acting within the scope of employment furthering the interests of the employer when he committed the tort. Anzalone v. Massachusetts Bay Transportation Authority, 403 Mass. 119, 124--25, 526 N.E.2d 246, 249 (1988) (police officer's claim for intentional infliction of emotional distress against supervisor was barred by the exclusivity provisions of the Workers' Compensation Act); O'Connell v. Chasdi, 400 Mass. 686, 690--91, 511 N.E.2d 349, 351--52 (1987) (exclusivity provisions of the Workers' Compensation Act did not bar employee's claims against a fellow employee for assault, battery and intentional infliction of emotional distress arising out of fellow employee's sexual harassment of plaintiff during a business trip); Brown v. Nutter, McClennen & Fish, 45 Mass.App.Ct. 212, 216--18, 696 N.E.2d 953, 956--57 (1998) (overruling dismissal of a legal secretary's claim for intentional infliction of emotional distress against her attorney-supervisor where attorney compelled her to falsify legal documents for his own personal benefit).

INTENTIONAL INFLICTION: INTENT

In order to prove intentional infliction of severe emotional distress, the plaintiff must prove that the defendant acted either with the desire or knowledge that emotional distress would result from [his/her] conduct or that [he/she] should have known that [his/her] conduct would cause the plaintiff to suffer emotional distress.  n3

§ 8.1.2 Extreme and Outrageous Conduct

"Extreme and outrageous" conduct is more than just workaday insults, hurt feelings from bad manners, annoyances, or petty oppressions. "Outrageousness" means a high order of recklessness, ruthlessness or deliberate malevolence.  n4

What is extreme and outrageous is for you to consider, given all the facts. For instance, outrageous behavior may be found by a repeated series of incidents, even if those incidents, when taken individually, might not be sufficiently extreme. Also, conduct otherwise reasonable may give rise to liability when it is directed at a person known to the defendant to be particularly susceptible to emotional distress because of some physical or emotional vulnerability.  n5

FOOTNOTES:
n1 Tetrault v. Mahoney, Hawkes & Goldings, 425 Mass. 456, 465--66, 681 N.E.2d 1189, 1196--97 (1997); Foley v. Polaroid Corp., 400 Mass. 82, 99--100, 508 N.E.2d 72, 82 (1987); Agis v. Howard Johnson Co., 371 Mass. 140, 144--45, 355 N.E.2d 315, 318--19 (1976); Cady v. Marcella, 49 Mass.App.Ct. 334, 340-41, 729 N.E.2d 1125, 1131 (2000); Brown v. Nutter, McClennen & Fish, 45 Mass.App.Ct. 212, 218, 696 N.E.2d 953, 957 (1998); Conway v. Smerling, 37 Mass.App.Ct. 1, 8, 635 N.E.2d 268, 273 (1994).

n2 Agis v. Howard Johnson Co., 371 Mass. 140, 144, 355 N.E.2d 315, 318 (1976). See also Simon v. Solomon, 385 Mass. 91, 95, 431 N.E.2d 556, 561 (1982).

n3 Tetrault v. Mahoney, Hawkes & Goldings, 425 Mass. 456, 465--66, 681 N.E.2d 1189, 1196--97 (1997); Simon v. Solomon, 385 Mass. 91, 96--97, 431 N.E.2d 556, 562 (1988); Agis v. Howard Johnson Co., 371 Mass. 140, 144--45, 355 N.E.2d 315, 318 (1976); George v. Jordan Marsh Co., 359 Mass. 244, 255, 268 N.E.2d 915, 921 (1971).

n4 Tetrault v. Mahoney, Hawkes & Goldings, 425 Mass. 456, 465--66, 681 N.E.2d 1189, 1196--97 (1997); Foley v. Polaroid Corp., 400 Mass. 82, 99--100, 508 N.E.2d 72, 82 (1987); Boyle v. Wenk, 378 Mass. 592, 595, 392 N.E.2d 1053, 1055--56 (1979); Agis v. Howard Johnson Co., 371 Mass. 140, 144--45, 355 N.E.2d 315, 319 (1976); Conway v. Smerling, 37 Mass.App.Ct. 1, 8--9, 635 N.E.2d 268, 273 (1994).

n5 Bresnahan v. McAuliffe, 47 Mass.App.Ct. 278, 282--83, 712 N.E.2d 1173, 1176--77 (1999) (parents had a reasonable expectation of proving at trial that the funeral home's communications and conduct in providing funeral services for their stillborn child were extreme and outrageous); Brown v. Nutter, McClennen & Fish, 45 Mass.App.Ct. 212, 218-

-19, 696 N.E.2d 953, 957--58 (1998) (legal secretary's allegations that her longtime supervisor had caused her to engage in illegal conduct for his own benefit and had continued to contact her despite her requests that he stop created a triable issue); Boyle v. Wenk, 378 Mass. 592, 595--96, 392 N.E.2d 1053, 1055--56 (1979); George v. Jordan Marsh Co., 359 Mass. 244, 254--55, 268 N.E.2d 915, 921 (1971); see also Simon v. Solomon, 385 Mass. 91, 96--97, 431 N.E.2d 556, 561--62 (1982).

Massachusetts Superior Court Civil Pattern Jury Instructions § 8.1

INTENTIONAL INFLICTION: DAMAGES

If you find that the plaintiff has satisfied each and every element of [his/her] claim for intentional infliction of emotional distress, you must consider the issue of damages. The rule of damages is a practical instrumentality for the administration of justice. Its object is to afford the equivalent in money for the actual loss caused by the wrong of another. You must consider what amount of money would be full, fair and reasonable based on all the evidence. The amount of damages should be based on just and reasonable inferences, even though there may be an element of uncertainty in your determination.  n1

FOOTNOTES:

n1 Rombola v. Cosindas, 351 Mass. 382, 385, 220 N.E.2d 919, 922 (1966); Agoos Leather Co. Inc. v. American & Foreign Ins. Co., 342 Mass. 603, 608, 174 N.E.2d 652, 655 (1962); Daniels v. Celeste, 303 Mass. 148, 150, 21 N.E.2d 1, 2 (1939); Sullivan v. Old Colony St. Ry. Co., 197 Mass. 512, 516, 83 N.E. 1091, 1092 (1908).

Massachusetts Superior Court Civil Pattern Jury Instructions  § 8.3

PART 4: GENERAL INSTRUCTIONS REQUESTED

72.02  "If You Find," or "If You Decide"

When I say in these instructions that a party has the burden of proof on any proposition, or use the expression "if you find," or "if you decide," I mean you must be persuaded, considering all the evidence in the case, that the proposition is more probably true than not true.

AUTHORITY: Devitt & Blackmar standard instruction

72.03 Evidence-Direct-Indirect or Circumstantial

There are, generally speaking, two types of evidence from which a jury may properly find the truth as to the facts of a case. One is direct evidence such as the testimony of an eyewitness.  The other is indirect or circumstantial evidence-the proof of a chain of circumstances pointing to the existence or non-existence of certain facts.

As a general rule, the law makes no distinction between direct or circumstantial evidence, but simply requires that the jury find the facts in accordance with the preponderance of all the evidence in the case, both direct and circumstantial.

AUTHORITY: Devitt & Blackmar standard instruction

72.13 Number of Witnesses

You are not bound to decide any issue of fact in accordance with the testimony of any number of witnesses which does not produce in your minds belief in the likelihood of truth, as against the testimony of a lesser number of witnesses or other evidence which does produce such belief in your minds.

The test is not which side brings the greater number of witnesses, or presents the greater quantity of evidence; but which witness, and which evidence, appeals to your minds as being most accurate, and otherwise trustworthy.

AUTHORITY: Devitt & Blackmar standard instruction

72.14 Single Witness

The testimony of a single witness which produces in your minds belief in the likelihood of truth is sufficient for the proof of any fact, and would justify a verdict in accordance with such testimony, even though a number of witnesses may have testified to the contrary, if, after consideration of all the evidence in the case, you hold greater belief in the accuracy and reliability of the one witness.

AUTHORITY: Devitt & Blackmar standard instruction

73.01 Credibility of Witnesses-Discrepancies in Testimony

You, as jurors, are the sole judges of the credibility of the witnesses and the weight their testimony deserves. You may be guided by the appearance and conduct of the witness, or by the manner in which the witness testifies, or by the character of the testimony given, or by evidence to the contrary of the testimony given.

You should carefully scrutinize all the testimony given, the circumstances under which each witness has testified, and every matter in evidence which tends to show whether a witness is worthy of belief. Consider each witness' intelligence, motive and state of mind, and demeanor or manner while on the stand. Consider the witness' ability to observe the matters as to which he has testified, and whether he impresses you as having an accurate recollection of these matters. Consider also any relation each witness may bear to either side of the case; the manner in which each witness might be affected by the verdict; and the extent to which, if at all, each witness is either supported or contradicted by other evidence in the case.

Inconsistencies or discrepancies in the testimony of a witness, or between the testimony of different witnesses, may or may not cause the jury to discredit such testimony. Two or more persons witnessing an incident or a transaction may see or hear it differently; and innocent misrecollection, like failure of recollection, is not an uncommon experience. In weighing the effect of a discrepancy, always consider whether it pertains to a matter of importance or an unimportant detail, and whether the discrepancy results from innocent error or intentional falsehood.

After making your own judgment, you will give the testimony of each witness such weight, if any, as you may think it deserves.

You may, in short, accept or reject the testimony of any witness in whole or in part.

Also, the weight of the evidence is not necessarily determined by the number of witnesses testifying to the existence or non-existence of any fact. You may find that the testimony of a small number of witnesses as to any fact is more credible than the testimony or a larger number of witnesses to the contrary.

AUTHORITY: Devitt & Blackmar standard instruction

73.04  Impeachment-Inconsistent Statements or Conduct-Falsus in   Uno Falsus in Omnibus

A witness may be discredited or impeached by contradictory evidence; or by evidence that at some other time the witness has said or done something, or has failed to say or do something which is inconsistent with the witness' present testimony.

If you believe any witness has been impeached and thus discredited, it is your exclusive province to give the testimony of that witness such credibility, if any, as you may think it deserves.

If a witness is shown knowingly to have testified falsely concerning any material matter, you have a right to distrust such witness's testimony in other particulars and you may reject all the testimony of that witness or give it such credibility as you may think it deserves.

An act or omission is "knowingly" done, if voluntarily and intentionally, and not because of mistake or accident or other innocent reason.

AUTHORITY: Devitt & Blackmar standard instruction

73.09  Effect of Prior Inconsistent Statements or Conduct -
By a Witness Not a Party - By a Party

Evidence that at some other time a witness, not a party to this action, has said or done something which is inconsistent with the witness' testimony at the trial, may be considered for the sole purpose of judging the credibility of the witness but may never be considered as evidence of proof of the truth of any such statement.

Where, however, the witness is a party to the case, and by such statement, or other conduct, admits some fact or facts against his interest, then such statement or other conduct, if knowingly made or done, may be considered as evidence of the truth of the fact or facts so admitted by such party, as well as for the purpose of judging the credibility of the party as a witness.

An act or omission is "knowingly" done, if done voluntarily and intentionally, and not because of mistake or accident or other innocent reason.

AUTHORITY: Devitt & Blackmar standard instruction

85.19  Damages - Punitive and Exemplary - When Caused by
 Intentional Tort - "Maliciously" - "Wantonly" -
 "Oppressively" - Defined


In addition to actual damages, the law permits the jury, under certain circumstances, to award the injured person punitive and exemplary damages, in order to punish the wrongdoer for some extraordinary misconduct, and to serve as an example or warning to others not to engage in such conduct.

If you find from a preponderance of the evidence in the case that the plaintiff is entitled to a verdict for actual or compensatory damages, and you further find that the act or omission of the defendant, which proximately caused actual injury or damage to the plaintiff, was maliciously, or wantonly, or oppressively done, then you may add to the award of actual damages such amount as you shall unanimously agree to be proper, as punitive and exemplary damages.

An act or a failure to act is "maliciously" done, if prompted or accompanied by ill will, or spite, or grudge, either toward the injured person individually, or toward all persons in one or more groups or categories of which the injured person is a member.

An act or a failure to act is "wantonly" done, if done in reckless or callous disregard of, or indifference to, the rights of one or more persons, including the injured person.

An act or a failure to act is "oppressively" done, if done in a way or manner which injures, or damages, or otherwise violates the rights of another person with unnecessary harshness or severity, as by misuse or abuse of authority or power, or by taking advantage of some weakness, or disability, or misfortune of another person.

Whether or not to make any award of punitive and exemplary damages, in addition to actual damages, is a matter exclusively within the province of the jury, if you unanimously find, from a preponderance of the evidence in the case, that the defendant's act or omission, which proximately caused actual damage to the plaintiff, was maliciously or wantonly or oppressively done; but you should always bear in mind that such extraordinary damages may be allowed only if you should first unanimously award the plaintiff a verdict for actual or compensatory damages.  And you should also bear in mind, not only the conditions under which, and the purposes for which, the law permits an award of punitive and exemplary damages to be made, but also the requirement of the law that the amount of such extraordinary damages, when awarded, must be fixed with calm discretion and sound reason, and must never be either awarded, or fixed in amount, because of any sympathy, or bias, or prejudice with respect to any party to the case.

AUTHORITY: Devitt & Blackmar standard instruction

WITNESS CREDIBILITY

First in my instructions, though not necessarily the most important, but first in my instructions are the testimony of the witnesses.  Now, you are entitled to use in your deliberations everything that you've learned about these witnesses from the witness stand.  You are the judges of the witnesses.  You have the powers as jurors to believe everything that a witness said.  But equally, you can disbelieve and disregard everything that a witness said. You can believe some of the things a witness said and disbelieve other things.  You're not prevented from reaching a verdict because one witness testified to one version of an event and another witness testified to another version of the same event and they were both under oath.  You can decide where the truth lies.

Now, how do you do it?  What can you consider?  Well, you can consider everything you've learned about the witnesses.  How they answered questions both on direct or on cross-examination.  You can consider what their relationship was to one side or the other in the case.  Did the witness stand to gain or lose anything depending upon how the case comes out?  Was the witness friendly or hostile to some other person in the case, and if so, did that skew the witness's testimony.

As an intensely practical matter, what was the witness's ability to recall, to comprehend, to understand those things about which the witness testified.  Could the witness see, hear, what was the witness's interest in the matter?

In short, as you are reasonable men and women, you can sum up a witness's testimony and determine what you believe about that testimony.  Does it have the ring of truth?  Is it plausible?  Is it persuasive?  Is it, for instance, backed up by other evidence in the case, the documents, the photographs, the deposition testimony.  Did the witness testify to the same thing here before you as was testified to at another occasion?  Do those things back up each other up, or does the other testimony, the other testimony of other witnesses, or documents, does that detract and take away from a particular witness's testimony?

You can sum up the witnesses.  You decide what you believe.  You can believe everything a witness said, believe parts of what a witness said, you can disregard and disbelieve what a witness said.  You're the judges of the evidence

Authority: <u>Crawford v. City of Quincy, et al.</u>, Docket No: 97-11499-WGY, pp. 6-7

PARTY'S FAILURE TO PRODUCE EVIDENCE

      If you find that a party could have produced certain evidence, and that the evidence was within that party's control, and that this evidence would have been relevant in deciding facts in dispute in this case, you are permitted, but not required, to infer that the evidence, if produced, would have been unfavorable to that party.

      In deciding whether to draw this inference, you should consider whether the evidence that was not produced would merely have duplicated other evidence already introduced. You may also consider whether the party has offered a reason for not producing this evidence, and whether that reason was explained to your satisfaction.

*Attribution*:  Adapted from Plaintiff's Proposed Instruction No. 6 in Smith v. Tucker; 88 Civ. 2798 (February 21, 1992).  Plaintiff in Smith represented that this instruction had been adapted from instructions given in Eng v. Scully, 83 Civ. 5628 PKL (Hon. K. Leisure).

Found at Section 1983 Litigation, Jury Instructions, Volume 4, Martin A. Schwartz and George C. Pratt, Panel Publications, 2003. (Instruction 2.04.01)

FAILURE TO PRODUCE EVIDENCE; FURTHER INSTRUCTION ALSO REQUESTED

If you find that a party failed to offer relevant evidence that the party would have offered if it had been favorable to him, you may infer that the evidence was adverse to that party.

*Attribution*:  The model charge was drafted based upon the analysis in Neihus v. Liberio, 973 F.2d 526 (7th Cir. 1992), which is annotated in  2.04 [C] infra.  The court in Neihus found that the four-part missing evidence instruction, which was given by the federal district court and drawn from Illinois pattern jury instructions, was both cumbersome and unnecessary.  The court's discussion indicates that in an appropriate case it would approve giving the model charge set forth above.

Found at Section 1983 Litigation, Jury Instructions, Volume 4, Martin A. Schwartz and George C. Pratt, Panel Publications, 2003. (Instruction 2.04.2)

SECTION 1983 INSTRUCTIONS

Let's start with the federal civil rights claims, because the federal civil rights claim is very different than the state law claims we will discuss later.

For the federal civil rights claim to be proved, Dr. Philip has to prove that the rights guaranteed to him, or at least one of the rights, and that's the one we re going to talk to, one of the rights guaranteed to him under the constitution, not just under all sorts of laws, but under the constitution of the United States was taken away by one or more of the defendants, while acting under color of law.

Now, the right, the constitutional right that Dr. Philip is going to, has been and will be talking about here, is the right to speak freely on matters of public concern under the First Amendment.  The First Amendment to the Constitution of the United States, in the Bill of Rights, says that no person shall be suffer retaliation from the government for speaking on a matter of public concern.  The Bill of Rights protects us against intrusions by [the] government.  It doesn't protect us against intrusions by our neighbors or the people we do business with.  It protects us against intrusions by government.

So the first thing that Dr. Philip has to prove here is that if there was an intrusion, and he claims there was, it was by government or by someone acting under color of law. [So, you first have to find the defendant was acting with the authority of the State of Massachusetts.  [And in this case, based on the evidence and the stipulations of the parties, I am instructing you that the defendant was acting with the cloak of state authority, and that part of the verdict form has already been marked, "Yes."]

Authority: <u>Crawford v. City of Quincy, et al.</u>, Docket No: 97-11499-WGY

Respectfully Submitted,

/s/ Daniel S. Sharp

_____

Daniel S. Sharp
Elaine Whitfield Sharp
Attorneys for Plaintiff
(BBO 565524)
196 Atlantic Avenue
Marblehead, MA  01945
781-639-1862

<u>Certificate of Service</u>

Daniel S. Sharp certifies that a copy of the document above was served by ECF on March 12, 2006 and in hand on counsel for all opposing parties on March 13, 2006 to:

Attorney Jean M. Kelly
Assistant Attorney General
One Ashburton Place
Boston, MA  02108-1598

/s/ Daniel S. Sharp
_____