UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MASSACHUSETTS

"FILED IN OPEN COURT"
3/14/2006

CIVIL ACTION: 04-CV-11069-JLT

)
ABRAHAM PHILIP, M.D.                              )
        Plaintiff,                               )
                                                 )
v.                                               )
                                                 )
JOHN CRONIN,                                     )
        Defendant.                               )
_____)

**REQUESTS FOR JURY INSTRUCTIONS OF DEFENDANT JOHN CRONIN**

Now comes the Defendant John Cronin and hereby requests that this court

submit to the jury at trial the following jury instructions:

1.    PLAINTIFF'S BURDEN.    The plaintiff has the burden of establishing the

essential elements of his case by a preponderance of the evidence. If you find that he has

done so, you should find for the plaintiff. If you find that plaintiff has not so established

one or more of these elements you must find for defendant. 3 Devitt and Blackmar,

Federal Jury Practice and Instructions, 84.03.

2.    SPECULATION.    An essential element of the plaintiff's case cannot rest upon

a "mere scintilla" of evidence. Stapelton v. Macchi, 401 Mass. 725, 519 N.E.2d 273

(1988); Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 252 (1986). Evidence which

merely raises a suspicion or a surmise or a conjecture is not enough. Hillyer v.

Dickenson, 154 Mass. 502, 504, 28 N.E.2d 905 (1891). There must be evidence from

which a reasonable inference could be drawn in favor of the plaintiff. That the inference

be reasonable requires that it be based on "probabilities rather than possibilities" and not the not the result of "mere speculation and conjecture." Johnson v. Summers, 411 Mass. 82, 92, 577 N.E.2d 301 (1991); Ferragamo v. Massachusetts Bay Transp. Auth., 395 Mass. 581, 591, 481 N.E.2d 477 (1985); Poirier v. Plymouth, 374 Mass. 206, 212 372 N.E.2d 212 (1978); McLaughlin v. Vinios, 39 Mass.App.Ct. 5, 7, 653 N.E.2d 189 (1995). See also, Roche v. John Hancock Mutual Life Ins. Co., 81 F.3d 249, 253 (1st Cir. 1996) (and cases cited therein).

In this case the plaintiff claims that the defendant, while acting "under color" of state law, intentionally deprived the plaintiff of the plaintiff's rights under the Constitution of the United States.

Specifically, the plaintiff claims that while the defendant, was acting under color of authority of the State of Massachusetts, as Chief Administrative Officer of the Office of the Chief Medical Examiner, he intentionally violated the plaintiff's constitutional rights under the First Amendment to the Constitution by terminating his employment contract because of the plaintiff's exercise of the right of free speech, that, through the termination, defendant tortiously interfered with plaintiff's contractual relationship with the Office of the Chief Medical Examiner and that in terminating the plaintiff the defendant intentionally inflicted emotional distress on the plaintiff.

The defendant denies that he violated the plaintiff's rights in any way, and asserts that the plaintiff's employment contract was terminated because of the plaintiff's own inappropriate and unprofessional behavior; and not because the plaintiff exercised his right of free speech.

2

Regarding Count I – First Amendment:

3.      Where a plaintiff asserts retaliatory discharge in violation of the First Amendment, he must establish several elements to state a claim under Section 1983: (1) that the actions of the defendant were "under color" of the authority of the State (2) that the expressions which are alleged to have provoked the retaliatory action relate to matters of public concern and not on a matter purely of private concern; (3) that the alleged retaliatory action deprived him of some valuable benefit and was the proximate or legal cause of damages sustained by the plaintiff, that, except for such conduct, the damages would not have occurred; and (4) that there was a direct causal relationship between the protected expression and the retaliatory action. See, e.g., Wagner v. Wheeler, 13 F.3d 86, 89 (4th Cir.1993). See also Mt. Healthy City School Dist. Bd. of Educ.v. Doyle, 429 U.S. 274, 287, 97 S.Ct. 568, 576 (1977); O'Connor v. Steeves, 994 F.2d 905, 917 (1st Cir.1993) (discussing the Mt. Healthy causation requirement).

4.      In a ... [First Amendment retaliation] case, plaintiffs must bear the threshold burden of producing sufficient direct or circumstantial evidence from which a reasonable person could infer that plaintiff's termination would not have occurred but for his constitutionally protected conduct. Acevedo-Diaz v. Aponte, 1 F.3d 62, 66-67 (1st Cir.1993).

5.      Plaintiff is not entitled to rely "solely on the temporal proximity of the protected statement to the alleged retaliatory conduct." Storlazzi v. Bakey, 894 F. Supp. 494, 503 (D.Mass.1995). Rather, he must "point to ... independent facts to support the allegation that his protected speech substantially motivated the [adverse decision]." Id. at 503. To

3

meet this burden plaintiff must prove that his termination would not have occurred but for his constitutionally protected conduct.

6.     However, if you find that the plaintiff would have been terminated even if he had not engaged in any constitutionally protected conduct, then you must find in favor of the defendant with respect to plaintiff's First Amendment claims. Mt. Healthy, supra at 287, 97 S.Ct. at 576; Collins v. Nuzzo, 244 F.3d 246, 251-52 (1st Cir. 2001).

7.     A plaintiff-employee who would have been dismissed in any event on legitimate grounds should not be placed in a better position merely because he has exercised a constitutional right that was not a motivating factor in the employment decision. Acevedo-Diaz v. Aponte, 1 F.3d 62, 66 (1st Cir.1993); Storlazzi, 894 F. Supp. at 503.

8.     Lastly, even if you find that the plaintiff has proven, by a preponderance of the evidence, each of the essential elements of his claim against the defendant under the First Amendment, the defendant may be entitled to qualified immunity with respect to plaintiff's First Amendment Claim.

A government employee is immune to damages where a reasonable official would believe, albeit mistakenly, that his conduct did not violate the First Amendment. Harlow v. Fitzgerald, 457 U.S. 800, 818-19, 102 S.Ct. 2727 (1982). Immunity exists even when the right invoked by the plaintiff is clearly established, "so long as the official could reasonably have believed 'on the facts' that no violation existed." Dirrane v. Brookline Police Dep't, 315 F.3d 65, 69 (1st Cir. 2002) (citations omitted). In this case, if you find that defendant, in terminating plaintiff's contract, could reasonably have believed 'on the facts' that no violation of plaintiff's First Amendment rights existed, you must find for the defendant.

9.      You should be mindful that under the law applicable to this case, a public

employer may terminate the employment of a public employee for any reason, good or

bad, fair or unfair, as long as it is not done because of the employee's exercise of

protected First Amendment rights. You must not second guess that decision or permit

any sympathy for the employee to lead you to substitute your own judgment for that of

the defendant even though you personally may not approve of the action taken and would

have acted differently under the circumstances. Neither does the law require that a public

employer extend any special or favorable treatment to public employees because of their

exercise of protected First Amendment rights.

        If you find for the plaintiff and against the defendant on their defenses you must

then decide the issue of the plaintiff's damages, which I will explain to you later.

## Regarding Count II – Intentional Interference with Contractual Relations Under State Law:

        The parties are in agreement that plaintiff had a contract with the Office of the

Chief Medical Examiner and that defendant knew about the contract.  Plaintiff alleges

that defendant John Cronin improperly interfered with the Office of the Chief Medical

Examiner's performance of its obligations under this contract.

10.     In order to prevail on this claim of improper interference with a contractual

relationship, plaintiff must prove by a preponderance of the evidence that:

-       A.      The defendant intentionally induced or persuaded the Office of the Chief
                Medical Examiner not to perform its obligations under the contract;

-       B.      The defendant's interference with the Office of the Chief Medical
                Examiner's performance of its obligations under the contract, in addition
                to being intentional, was improper in motive or in means; and

5

C.    The plaintiff was harmed by the defendant's actions.

King v. Driscoll, 418 Mass. 576, 587, 638 N.E.2d 488 (1994); *appeal after remand*, 424 Mass. 1, 673 N.E.2d 859 (1996); G.S. Enter., Inc. v. Falmouth Marine, Inc., 410 Mass. 262, 571 N.E.2d 1363 (1991).

11.    Improper Motive or Means:    In general, an individual does not act with an improper "motive" so long as his purpose is, at least in part, to further the interest of the organization, and the organization has not engaged in conduct that is otherwise unlawful. In the present case, you may not find that defendant acted for an improper purpose in interfering with the plaintiff's contractual relation with the Medical Examiner's office unless you find that defendant acted solely out of spite or ill will against the plaintiff, or for some unlawful purpose, rather than for the purpose of promoting the interests of the Office of the Chief Medical Examiner. Also you may not find that the defendant used any improper "means" to interfere with plaintiff's contract unless you find that the defendant's conduct involved physical violence, fraud, or other unlawful conduct. Doliner v. Brown, 21 Mass.App.Ct. 692, 498 N.E.2d1036 (1986); see also Schwanbeck v. Federal-Mogul Corp., 412 Mass. 703, 592 N.E.2d 1289 (1992); Restatement (Second) of Torts § 768 (1979).

12.    If you find that plaintiff has proven each of these elements by a preponderance of the evidence, you must then determine if the defendant, who was plaintiff's supervisor, is immune from liability for plaintiff's tortious interference claims because of privilege. Generally, "a defendant-supervisor is entitled to a qualified privilege in an employment-based tortious interference case (and, thus, will not be liable for employment decisions that are within the scope of his supervisory duties)." Zimmerman v. Direct Federal

6

Credit Union et al., 262 F.3d 70, 76 (1st Cir. 2001), citing Gram v. Liberty Mut. Ins. Co.,
384 Mass. 659, 429 N.E.2d 21, 24 (1981)

13.    The only exception to this rule would apply if you find that the supervisor acted
with actual malice toward the employee. Zimmerman v. Direct Federal Credit Union et
al., 262 F.3d 70 (1st Cir. 2001). Proof of actual malice requires more than a showing of
mere hostility. (See King v. Driscoll, 418 Mass. 576, 638 N.E.2d 488, 495 (1994). In
addition, personal dislike will not warrant an inference of the requisite ill will. Id. The
plaintiff must prove that malice was the controlling factor in the supervisor's interference.
Alba v. Sampson, 427 Mass. 1104, 44 Mass.App.Ct. 311, 690 N.E.2d 1240, 1243 (1998).
Furthermore, "[a]ny reasonable inference of malice must ... be based on probabilities
rather than possibilities." Gram, 429 N.E.2d at 24-25 (citation omitted). Finally, for you
to make such an inference, there must have been affirmative showing by the plaintiff that
the actions taken by the supervisor were not derived from a desire to advance the
employer's legitimate business interests, (Boothby v. Texon, Inc., 414 Mass. 468, 608
N.E.2d 1028, 1040 (1993); Alba, 690 N.E.2d at 1243), but rather were derived from a
"spiteful, malignant purpose, unrelated to the legitimate corporate interest." Wright v.
Shriners Hosp. for Crippled Children, 412 Mass. 469, 476, 589 N.E.2d 1241 (1992)
(citations omitted).

       If you find for the plaintiff and against the defendant on plaintiff's tortious
interference claim, you must then decide the issue of the plaintiff's damages, which,
again, I will explain to you shortly.

Regarding Count III – Intentional Infliction of Emotional Distress

14.    In this case, the plaintiff is claiming that the defendant intentionally or recklessly inflicted emotional distress upon the plaintiff in connection with the termination of the plaintiff's contract with the Medical Examiner's office. In order to recover, the plaintiff must prove by a preponderance of the evidence that:

A.    The defendant's conduct was 'extreme and outrageous,' was 'beyond all possible bounds of decency' and was 'utterly intolerable in a civilized community.' Restatement (Second) of Torts s 46, comment d (1965); George, 359 Mass. at 254-255, 268 N.E.2d 915.

B.    The emotional distress sustained by the plaintiff was 'severe' and of a nature 'that no reasonable man could be expected to endure it.' Restatement (Second) of Torts s 46, comment j (1965); Womack v. Eldridge, supra. Agis v. Howard Johnson Co., 371 Mass. 140, 144-145, 355 N.E.2d 315 (1976).

C.    The defendant acted either with the desire or knowledge that emotional distress would result from his conduct, or that he should have known that his conduct would cause the plaintiff to suffer emotional distress. Tetrault v. Mahoney, Hawkes & Goldings, 425 Mass. 456, 465-66, 681 N.E.2d 1189 (1997); Simon v. Solomon, 385 Mass. 91, 96-97, 431 N.E.2d 556 (1988); Agis v. Howard Johnson Co., 371 Mass. 140, 144-45, 335 N.E. 2d 315 (1976); George v. Jordan Marsh Co., 359 Mass. 244, 255, 268 N.E.2d 915 (1971).

D.     The actions of the defendant were the cause of the plaintiff's distress.
       Spackman v. Good, 245 Cal.App.2d 518, 54 Cal.Rptr. 78 (1966); Womack
       v. Eldridge, 215 Va. 338, 341, 210 S.E.2d 145 (1974).

15.    "Extreme and outrageous" conduct is more than just workaday insults, hurt
feelings from bad manners, annoyances, or petty oppressions. "Outrageousness" means a
high order of recklessness, ruthlessness or deliberate malevolence. Tetrault, 425 Mass.
456, 465-66, 681 N.E.2d 1189.

16.    Liability cannot be predicated on "'mere insults, indignities, threats, annoyances,
petty oppressions or other trivialities' nor even is it enough 'that the defendant has acted
with an intent which is tortious or even criminal, or that he has intended to inflict
emotional distress, or even that his conduct has been characterized by "malice" or a
degree of aggravation which would entitle the plaintiff to punitive damages for another
tort.'" Foley v. Polaroid Corp., 400 Mass. 82, 99, 508 N.E.2d 72 (1987), quoting
Restatement (Second) of Torts § 46 comment d (1965). Tetrault, 425 Mass. at 466, 681
N.E.2d 1189 (1997). The conduct must have been "so outrageous in character, and so
extreme in degree, as to go beyond all possible bounds of decency, and to be regarded as
atrocious and utterly intolerable in a civilized community." Foley, 400 Mass. at 99,
citing Restatement (Second) of Torts § 46.

17.    Even if you find that defendant's conduct violated the plaintiff's civil rights, that
finding "'does not, in and of itself, necessitate a finding that the conduct is sufficiently
egregious to state a claim for intentional infliction of emotional distress.'" Edsall v.
Assumption College, 367 F. Supp. 2d 72, 80 (D. Mass. 2005), citing Guckenberger v.

9

Boston Univ., 957 F. Supp. 306, 319 (D. Mass.1997).  See also Sinai v. New England

Tel. & Tel. Co., 1990 WL 150015 (D. Mass. 1990) (Court found as a matter of law that

Defendant's repeated denials of plaintiff's application of employment may have been

discriminatory, but were not "utterly intolerable in a civilized community" so as to serve

as a basis for a claim).


## DAMAGES

I will now turn to the issue of damages.

18.    GENERAL INSTRUCTION ON DAMAGES.  Of course, the fact that I am

giving you instructions concerning the issue of damages should not be interpreted as an

indication that I think the plaintiff should, or should not, prevail in this case.  However, if

you find that the plaintiff is entitled to a verdict in his favor, you will consider whether he

has been damaged and, if so, in what amount.  Damages in a case like this one are limited

to such amounts as will reasonably compensate the wronged person or persons for such

damage as you find, by a preponderance of the evidence, they have sustained as a direct

result of the defendant's wrongful act or acts.  Damages are not allowed as a punishment

and cannot be imposed or increased to penalize the defendant.  You are not permitted to

award speculative damages.  So you are not to include in any verdict compensation for

any future loss, which, although possible, is not reasonably certain to occur.  The burden

of proof on the issue of damages, as with every element of the plaintiff's claim, rests on

the plaintiff.  He has the burden to establish by a preponderance of the evidence both the

fact of damage and the amount of that damage.  Stone v. Essex County Newspapers, Inc.,

367 Mass. 849, 860 (1975); Malone v. Belcher, 216 Mass. 209, 212 (1913); Devitt &

Blackmar, Federal Jury Practice and Instructions, § 85.08. <u>Bigelow, v. RKO Radio</u>
<u>Pictures, Inc.</u>, 327 U.S. 251 (1946), reh. denied, 327 U.S. 817; <u>Story Parchment Co. v.</u>
<u>Paterson Parchment Paper Co.</u>, 282 U.S. 555 (1931); <u>Brown v. United States</u>, 230 F.
Supp. 774, 776 (D. Mass. 1964).

19.    "The connection between the tortious act of a person sought to be charged for the
consequences of an injury, as the cause, and the injury sustained, as the effect, must be
established by a fair preponderance of the evidence before a plaintiff can be permitted to
recover.  Such causal connection cannot be left to conjecture, surmise or speculation, but
must rest upon a firm foundation of proof." <u>Sullivan v. Old Colony St. Ry. Co.</u>, 197
Mass. 512, 514 (1908).  Similarly damages are available under the federal civil rights
statute for actions "found . . . to have been violative of . . . Constitutional Rights and to
have caused compensable injury . . . ." <u>Carey v. Pipus</u>, 435 U.S. 247, 253 - 255 (1978),
citing <u>Wood v. Strickland</u>, 420 U.S., at 319; <u>Codd v. Velger</u>, 429 U.S. 624, 630-631
(1977) (Brennan, J., dissenting); <u>Adickes v. S. H. Kress & Co.</u>, 398 U.S. 144, 232 (1970)
(Brennan, J., concurring and dissenting); <u>Bivens v. Six Unknown Fed. Narcotics Agents,</u>
403 U.S. 388, 397  (1971) (action for damages directly under Fourth Amendment).

20.    You are instructed that, even if you find that plaintiffs civil rights were violated,
in order for a defendant to be liable in damages for such violation, the plaintiff must
prove that he actually sustained an injury as a result of the constitutional violation.  Under
the Civil Rights Statute damages cannot be awarded based upon an abstract value of
rights violated.  Plaintiff must prove that he sustained actual injuries as a direct result of
the constitutional violation, and must prove the amount of damage suffered.  You, the
jury, must not speculate on any abstract value of a civil rights violation. <u>Memphis</u>

11

Comm. School Dist. v. Stachura, 477 U.S. 299 (1986); Carey v. Pipus, 435 U.S. 247 (1978); Santana v. Registrars of Voters of Worcester, 398 Mass. 862, 502 N.E.2d 132 (1987). An award of damages must be supported by competent evidence concerning the injury. Cary v. Pipus, 435 U.S. at 263, citing Gertz v. Robert Welch, Inc., 418 U.S. 323, 350 (1974).

21.    If you find that the plaintiff has proven by a preponderence of the evidence that he has been caused to suffer actual damages as a result of the conduct of the defendant, you must not find damages that are duplicative. Acevedo-Garcis v. Monroig, 351 F.3d 547, 569 (1st Cir. 2003).

22.    §1983 - DAMAGES PUNITIVE - Normally punitive damages cannot be awarded unless specifically authorized by statute. In this matter, the Civil Rights statute does provide for such a consideration. Punitive damages are a discretionary matter for the jury in a section 1983 action but may only be awarded if plaintiff makes an adequate threshold showing. In order to award such damages, the plaintiff must prove that the defendant "acted with a conscious perceived risk that he would violate [the plaintiff's] constitutional rights." Kolstad v. Am. Dental Ass'n, 527 U.S. 526, 535 (1999). In other words, "[t]he special showing needed to trigger eligibility for punitive damages . . . 'evil motive' or 'reckless or callous indifference' . . . pertains to the defendant's 'knowledge that [he] may be acting in violation of federal law, not [simply his] awareness that [he may be doing something improper].'" Thus, the standard requires proof that the defendant acted "in the face of a perceived risk that [his] actions [would] violate federal law." Iacobucci v. Boulter, 193 F.3d 14, 26 (1st Cir. 1999) (internal citation omitted) (quoting Kolstad, 527 U.S. at 535). The evil motive or indifferent state of mind must be tied into the

defendant's knowledge that he was violating plaintiff's civil rights for you to find

punitive damages.  Davis v. Renie, 264 F.3rd 86, 115 (1st Cir. 2001).  In assessing

punitives damages, if any, you must assess the degree of reprehensibility of the conduct.

Typically, a ratio of around 2:1 compensatory to personal damages is considered

permissible.  Zimmerman, 262 F.3d at 82.

Damages on Intentional Infliction of Emotional Distress

23.     If you find that the plaintiff has satisfied each and every element of his claim for

intentional infliction of emotional distress, you must consider the issue of damages.  The

object of damages is to afford the equivalent in money for the actual loss caused by the

wrong of another.  You must consider what amount of money would be full, fair and

reasonable based on all the evidence.  The amount of damages should be based on just

and reasonable inferences, even though there may be an element of uncertainty in you

determination.  See, e.g., Rombola v. Cosindas, 351 Mass. 382, 385, 220 N.E.2d 919, 922

(1966); Agoos Leather Co. Inc., v. American Foreign Ins. Co., 342 Mass. 603, 608, 174

N.E.2d 652, 655 (1962).

Respectfully Submitted,
JOHN CRONIN

By his Attorneys,

THOMAS F. REILLY
ATTORNEY GENERAL

s/Brian M. Donovan
Jean M. Kelley, BBO #265540
Brian M. Donovan, BBO #650551
Assistant Attorney General
Government Bureau/Trial Division
One Ashburton Place, Room 1813
Boston, MA 02108-1598
(617) 727-2200 ext. 3327
brian.donovan@ago.state.ma.us

## CERTIFICATE OF SERVICE

I hereby certify that this was served on counsel of record for the plaintiff by hand on March 14, 2006.

Daniel S. Sharp
Elaine Whitfield Sharp
Attorneys for Plaintiff
196 Atlantic Avenue
Marblehead, MA 01945

s/ Brian M. Donovan
Brian M. Donovan
Assistant Attorney General
brian.donovan@ago.state.ma.us