UNITED STATES DISTRICT COURT
DISTRICT OF MASSACHUSETTS

CIVIL ACTION: 04-CV-11069-JLT

ABRAHAM PHILIP, MD )
)
Plaintiff, )
)
v. )
)
JOHN CRONIN, )
)
Defendant. )

## MEMORANDUM OF LAW IN SUPPORT OF
## DEFENDANT'S MOTION FOR A DIRECTED VERDICT

The Court should grant the Defendant's motion for a directed verdict in this case. The Plaintiff has not submitted evidence at trial sufficient to prove any of the essential elements of his claim. For the reasons set forth below, plaintiff has not established a causal link between his alleged protected speech and the termination of his conduct. Indeed, the decision to terminate the contract would have been made regardless of his speech. Secondly, the Court should direct a verdict in favor of the Defendant on the issues of: punitive damages; the qualified immunity of the Defendant on both the first amendment and interference with contractual relations claims; and, lastly, the Plaintiff's claim for intentional infliction of emotional distress.

## ARGUMENT

I.  DEFENDANT IS ENTITLED TO A DIRECTED VERDICT AS A MATTER OF LAW ON COUNT I WHERE PLAINTIFF HAS FAILED TO ESTABLISH A CAUSAL LINK BETWEEN THE ALLEGED PROTECTED EXPRESSION AND THE TERMINATION OF HIS EMPLOYMENT CONTRACT.

Plaintiff here makes claim that his employment contract with the Commonwealth of Massachusetts was terminated in retaliation for Plaintiff's exercise of his First Amendment right to petition the Governor and other state officials. (Amended Complaint, Para. 41.) Here, the speech which Plaintiff alleges to be protected is contained in two letters to the Governor of the Commonwealth. The first, dated March 1, 2004, is entitled "Re: Problems at the Office of Chief Medical Examiner (Defendant's Trial Exhibit H); the second, also dated March 1, 2004, is entitled "Re: Organ Procurement: Procedures of Concern" (Defendant's Trial Exhibit I).

Plaintiff has asserted at trial that a copy of the first letter was provided to John Cronin on March 1, 2004; that the memorandum attached to the second letter was provided to Defendant via a facsimile dated March 3, 2004; and that Plaintiff's employment contract was terminated on March 3, 2004. However, Plaintiff has provided no evidence of a causal link between the two letters and his termination. As a matter of law, therefore, his First Amendment claim must fail.

Where a plaintiff asserts retaliatory discharge in violation of the First Amendment, he must establish three elements to state a claim under Section 1983: (1) that the expressions which are alleged to have provoked the retaliatory action relate to matters of public concern; (2) that the alleged retaliatory action deprived him of some valuable benefit; and (3) that there was a causal relationship between the protected expression and the retaliatory action. Wagner v. Wheeler, 13 F.3d 86, 89 (4th Cir.1993).

2

See also Mt. Healthy City School Dist. Bd. of Educ. v. Doyle, 429 U.S. 274, 287, 97 S.Ct. 568, 576 (1977); O'Connor v. Steeves, 994 F.2d 905, 917 (1st Cir.1993) (discussing the Mt. Healthy causation requirement).

As the First Circuit stated in Acevedo-Diaz v. Aponte:

> In a ... [First Amendment retaliation] case, plaintiffs must bear the threshold burden of producing sufficient direct or circumstantial evidence from which a jury reasonably may infer that plaintiff's constitutionally protected conduct ... was a 'substantial' or 'motivating' factor behind their dismissal. 1 F.3d 62, 66-67 (1st Cir.1993).

The First Circuit described the "substantial" or "motivating" factor test as a " 'but for' causation test." Id. at 66.

Plaintiff is not entitled to rely "solely on the temporal proximity of the protected statement to the alleged retaliatory conduct." Storlazzi v. Bakey, 894 F. Supp. 494, 503 (1995). Rather, he must "point to ... independent facts to support the allegation that his protected speech substantially motivated the [adverse decision]." Id. at 503. Similarly, a plaintiff may not rely upon "mere conclusory statements" in proof of his claim. Kaufman v. Puerto Rico Telephone Co. et al., 841 F.2d 1169, 1172 (1st Cir. 1988).

Indeed, where Plaintiff himself concedes that the relationship between the Plaintiff and Defendant Cronin had "deteriorated over time" prior to the series of events culminating in Plaintiff's termination (See Plaintiff's Amended Complaint, Para. 18), Defendant submits that Plaintiff did not establish that the termination related to the two letters at issue. See Rubinovitz v. Rogato, 60 F.3d 906 (1st Cir. 1995) (where plaintiffs had complained of earlier "harassment" by municipal officials, court affirmed summary judgment on First Amendment claim, holding that circumstantial evidence of temporal nexus is insufficient as a matter of law; and that "the inference suggested by the

[plaintiffs] rests on a "'tenuous insinuation...'" Id. at 911, citing National Amusements, Inc. v. Town of Dedham, 43 F.3d 731, 743 (1st Cir. 1995), cert. denied, 515 U.S. 1103, 115 S. Ct. 2247 (1995) (other cites omitted.)

In this case, as set out in Plaintiff's Amended Complaint, Plaintiff's trial testimony, and the other evidence presented at trial, Plaintiff does nothing more than make conclusory allegations that he wrote two letters to the Governor and that he was subsequently terminated. As a matter of law, this does not constitute evidence from which a jury reasonably may infer that plaintiff's constitutionally protected conduct was a 'substantial' or 'motivating' factor behind his dismissal. Indeed, the evidence submitted by plaintiff at trial during his case in chief merely suggests, at best, only the temporal proximity of the events, not any causal link. Rather, the evidence submitted at trial demonstrates that plaintiff wrote the letter due to his knowledge of his tenuous job status, not the other way around. This Court should therefore direct a verdict in favor of the Defendant with respect to Count I of the Amended Complaint for violation of the First Amendment.

II. DEFENDANT IS ENTITLED TO A DIRECTED VERDICT AS A MATTER OF LAW ON COUNT I WHERE DEFENDANT HAS DEMONSTRATED THAT THE DECISION TO TERMINATE PLAINTIFF'S CONTRACT WOULD HAVE BEEN THE SAME REGARDLESS OF PLAINTIFF'S ALLEGEDLY PROTECTED SPEECH

In addition to the Plaintiff's failure to establish a causal link between the expression of his allegedly protected speech and the termination of his employment contract, the Court should direct a verdict in favor of the Defendant on Plaintiff's claims under the First Amendment because the Defendant has provided a legitimate justification for the termination of that contract. Mt. Healthy, supra at 287, 97 S.Ct. at 576. As the First Circuit stated in Acevedo-Diaz:

4

> [T]he defendant-employer's Mt. Healthy defense, ensures that a plaintiff-employee who would have been dismissed in any event on legitimate grounds is not placed in a better position merely by virtue of the exercise of a constitutional right irrelevant to the adverse employment action. 1 F.3d at 66 (internal quotations omitted). (cited in Storlazzi, supra, at 503.)

Here, as set out in Defendant's trial testimony and the evidence entered into the record, Defendant was justified in terminating Plaintiff's employment contract, based upon Plaintiff's inappropriate, unprofessional conduct relating to two separate incidents: first, the incident in which Plaintiff, at the least, permitted a staff person at the OCME to be exposed to potentially dangerous blood products (see also Defendant's Trial Exhibit D); and, second, the series of incidents involving his unprofessional comments to an Assistant District Attorney in the context of an ongoing homicide investigation, as well as his unprofessional handling of the file in that matter (see also Defendant's Trial Exhibits E and F). The decision to terminate Dr. Philip's contract would have been made, whether or not he communicated with the Governor. He should not be put in a better position because of those communications than he otherwise would have been.

III.   DEFENDANT IS ENTITLED TO A DIRECTED VERDICT ON HIS DEFENSE OF QUALIFIED IMMUNITY WITH RESPECT TO PLAINTIFF'S FIRST AMENDMENT CLAIM BECAUSE THERE IS NO EVIDENCE DEFENDANT REASONABLY BELIEVED THAT HE WAS VIOLATING PLAINTIFF'S RIGHTS.

A government employee is immune from liability where a reasonable official would believe, albeit mistakenly, that his conduct did not violate the First Amendment. Harlow v. Fitzgerald, 457 U.S. 800, 818-19, 102 S.Ct. 2727 (1982). Immunity exists even when the right invoked by the plaintiff is clearly established, "so long as the official could reasonably have believed 'on the facts' that no violation existed." Dirrane v. Brookline Police Dep't, 315 F.3d 65, 69 (1st Cir. 2002) (citations omitted).

Here, the evidence at trial, including the testimony of both the Plaintiff and the Defendant, demonstrates that Defendant terminated plaintiff's contract after he and his superiors, as well as agency counsel, discussed Plaintiff's egregious and unprofessional conduct in connection with both the bloody death certificate and Plaintiff's actions as reflected in communications with an assistant district attorney. The decision to terminate the contract was made collaboratively by the Defendant, the Chief Medical Examiner and Defendant's superiors at the Executive Office of Public Safety. After meeting with those persons, Defendant did not believe that it was within his discretion not to terminate Plaintiff's contract, but, rather, that it was his duty to carry out the decision. As a matter of law, there is no evidence, beyond plaintiff's conclusory allegations, that Plaintiff's alleged protected speech was a factor in the decision to terminate the contract. The Defendant certainly could not have known or believed that he was violating any rights of the Plaintiff when Plaintiff's exercise of those rights had nothing to do with his termination. Denying the defendant immunity on these facts and evidence submitted at trial would impermissibly put the plaintiff in a better position merely because he exercised a constitutional right that was not a motivating factor in the employment decision. Acevedo-Diaz v. Aponte, 1 F.3d 62, 66 (1st Cir.1993); Storlazzi, 894 F. Supp. at 503.

IV.  DEFENDANT IS ENTITLED TO A DIRECTED VERDICT ON PUNITIVE DAMAGES BECAUSE PLAINTIFF DID NOT MAKE THE REQUISITE SHOWING DEFENDANT ACTED IN THE FACE OF A PERCEIVED RISK THAT HIS ACTIONS WOULD VIOLATE FEDERAL LAW.

The Court should direct a verdict for the Defendant on the issue of punitive damages. Punitive damages are typically a discretionary matter for the jury in a section 1983 action, but may only be awarded if plaintiff makes an adequate threshold showing.

In order to award such damages, the plaintiff must prove that the defendant "acted with a conscious perceived risk that he would violate [the plaintiff's] constitutional rights." Kolstad v. Am. Dental Ass'n, 527 U.S. 526, 535 (1999). In other words, "[t]he special showing needed to trigger eligibility for punitive damages . . . 'evil motive' or 'reckless or callous indifference' . . . pertains to the defendant's 'knowledge that [he] may be acting in violation of federal law, not [simply his] awareness that [he may be doing something improper].'" Thus, the standard requires proof that the defendant acted "in the face of a perceived risk that [his] actions [would] violate federal law." Iacobucci v. Boulter, 193 F.3d 14, 26 (1st Cir. 1999) (internal citation omitted) (quoting Kolstad, 527 U.S. at 535). The evil motive or indifferent state of mind must be tied into the defendant's knowledge that he was violating plaintiff's civil rights for you to find punitive damages. Davis v. Renie, 264 F.3rd 86, 115 (1st Cir. 2001).

Plaintiff did not, as a matter of law, establish at trial any "evil motive" or "reckless or callous indifference" on the part of Defendant with respect to Plaintiff's rights. The evidence submitted during Plaintiff's case not only offered little more than plaintiff's theories and conclusions, the evidence tended to prove just the opposite of plaintiff's claims. Defendant did not act with a conscious perceived risk that he was violating Plaintiff's constitutional rights when he acted to terminate Plaintiff's contract based on Plaintiff's unprofessional conduct.

7

V.   DEFENDANT IS ENTITLED TO A DIRECTED VERDICT ON COUNT II WHERE DEFENDANT WAS ACTING AS AN AGENT OF THE COMMONWEALTH IN PARTICIPATING IN THE DECISION TO TERMINATE PLAINTIFF'S CONTRACT; AND WHERE PLAINTIFF HAS NOT DEMONSTRATED ACTUAL MALICE ON THE PART OF THE DEFENDANT.

Plaintiff brings Count II in Intentional Interference with Contractual Relations Under State Law, alleging that Defendant Cronin intentionally interfered with Plaintiff's contract of employment with the Commonwealth. It is axiomatic that under Massachusetts law "a defendant-supervisor is entitled to a qualified privilege in an employment-based tortious interference case (and, thus, will not be liable for employment decisions that are within the scope of his supervisory duties)." Zimmerman v. Direct Federal Credit Union et al., 262 F.3d 70, 76 (1st Cir. 2001), citing Gram v. Liberty Mut. Ins. Co., 384 Mass. 659, 429 N.E.2d 21, 24 (1981). However, as noted by the Zimmerman court, "[T]he privilege is not sacrosanct. Massachusetts treats proof of actual malice as a proxy for proof that a supervisor was not acting on the employer's behalf, and deems such proof sufficient to overcome the qualified privilege." Id. at 76. The court then chronicles the limitations and restrictions which must be overcome in order for a plaintiff in an employment case to establish the element of malice sufficient to withstand dismissal:

Proof of actual malice requires more than a showing of mere hostility. See King v. Driscoll, 418 Mass. 576, 638 N.E.2d 488, 495 (1994) (explaining that "personal dislike will not warrant an inference of the requisite ill will"). For one thing, the plaintiff must prove that malice was the controlling factor in the supervisor's interference. Alba v. Sampson, 427 Mass. 1104, 44 Mass.App.Ct. 311, 690 N.E.2d 1240, 1243 (1998). For another thing, "[a]ny reasonable inference of malice must ... be based on probabilities

8

rather than possibilities." Gram, 429 N.E.2d at 24-25 (citation omitted). Finally, such an inference requires an affirmative showing that the actions taken by the supervisor were not derived from a desire to advance the employer's legitimate business interests. Boothby v. Texon, Inc., 414 Mass. 468, 608 N.E.2d 1028, 1040 (1993); Alba, 690 N.E.2d at 1243.

The evidence adduced at trial demonstrates that Defendant's actions in terminating the Plaintiff's contract were based on his position as the chief administrator at the OCME. The decision to terminate the contract was made collaboratively by the Defendant, the Chief Medical Examiner and Defendant's superiors at the Executive Office of Public Safety. After meeting with those persons, Defendant did not believe that it was within his discretion not to terminate Plaintiff's contract, but, rather, that it was his duty to carry out the decision. As a matter of law, Plaintiff has not established that malice was the controlling factor in Defendant's actions. The evidence at trial also demonstrates that the Plaintiff cannot make the necessary affirmative showing that the actions taken by the Defendant were not derived from a desire to advance the employer's legitimate business interests. It was clear to the Defendant that it was his job to terminate the contract based on the Plaintiff's unprofessional conduct.

Accordingly, Defendant submits that, based upon the evidence submitted at trial, Plaintiff has not demonstrated the requisite malice on the part of the Defendant Cronin that would permit a jury to find for Plaintiff on Count II of the Amended Complaint; and this Court should direct a verdict in favor of the Defendant with respect to that Count.

VI.  AS A MATTER OF LAW, THE EVIDENCE AT TRIAL DOES NOT SUPPORT A CLAIM FOR INTENTIONAL INFLICTION OF EMOTIONAL DISTRESS; AND THIS COURT SHOULD DIRECT A VERDICT IN FAVOR OF THE DEFENDANT WITH RESPECT TO COUNT III.

Based on the evidence submitted at trial, the Plaintiff has not, as a matter of law, met his burden with respect to his claim for intentional infliction of emotional distress. In order to recover for intentional infliction of emotional distress in Massachusetts, a plaintiff must establish four elements of that tort. It must be shown (1) that the actor intended to inflict emotional distress or that he knew or should have known that emotional distress was the likely result of his conduct. Restatement (Second) of Torts s 46, comment i (1965); Savage v. Boies, 77 Ariz. 355, 272 P.2d 349 (1954); Samms v. Eccles, 11 Utah 2d 289, 293, 358 P.2d 344 (1961); (2) that the conduct was 'extreme and outrageous,' was 'beyond all possible bounds of decency' and was 'utterly intolerable in a civilized community,' Restatement (Second) of Torts s 46, comment d (1965); George v. Jordan Marsh Co., 359 Mass. 244, 254--255, 268 N.E.2d 915 (1971); (3) that the actions of the defendant were the cause of the plaintiff's distress, Spackman v. Good, 245 Cal.App.2d 518, 54 Cal.Rptr. 78 (1966); Womack v. Eldridge, 215 Va. 338, 341, 210 S.E.2d 145 (1974); and (4) that the emotional distress sustained by the plaintiff was 'severe' and of a nature 'that no reasonable man could be expected to endure it.' Restatement (Second) of Torts s 46, comment j (1965); Womack v. Eldridge, supra. Agis v. Howard Johnson Co., 371 Mass. 140, 144-145, 355 N.E.2d 315 (1976).

In Agis the Supreme Judicial Court acknowledged a long-standing concern that fraudulent or frivolous claims might be encouraged if plaintiffs were permitted to recover for infliction of emotional distress, even in the absence of physical injury. See Agis, supra, at 143-144. The Agis Court rejected such reasoning, but acknowledged that

10

difficulties in proof were possible. On this basis, the Court held that recovery would be permitted, but only upon a finding of the extreme and outrageous conduct described above:

We are thus unwilling to deny the existence of this cause of action merely because there may be difficulties of proof. Instead, we believe 'the door to recovery should be opened but narrowly and with due caution.' Id., at 144. (cites omitted.)

Liability cannot be predicated on " 'mere insults, indignities, threats, annoyances, petty oppressions or other trivialities' nor even is it enough 'that the defendant has acted with an intent which is tortious or even criminal, or that he has intended to inflict emotional distress, or even that his conduct has been characterized by "malice" or a degree of aggravation which would entitle the plaintiff to punitive damages for another tort.' " Foley v. Polaroid Corp., 400 Mass. 82, 99, 508 N.E.2d 72 (1987), quoting Restatement (Second) of Torts §§ 46 comment d (1965). Tetrault v. Mahoney, Hawkes & Goldings, 425 Mass. 456, 466, 681 N.E.2d 1189 (1997).

Even conduct that is found to violate a plaintiff's civil rights "'does not, in and of itself, necessitate a finding that the conduct is sufficiently egregious to state a claim for intentional infliction of emotional distress.'" Edsall v. Assumption College, 367 F. Supp. 2d 72, 80 (D. Mass. 2005) (citing Guckenberger v. Boston Univ., 957 F. Supp. 306, 319 (D. Mass.1997)). (citing Marques v. Fitzgerald, 99 F.3d 1, 6-7 (1st Cir. 1996)). See also Sinai v. New England Tel. & Tel. Co., 1990 WL 150015 (D. Mass. 1990) (Court held that case could go forward on Plaintiff's claims under Title VII and Section 1981, but found as a matter of law that Defendant's repeated denials of plaintiff's application of employment may have been discriminatory, but were not "utterly intolerable in a civilized community" so as to serve as a basis for a claim. Id., at 5).

As discussed above, the Plaintiff is unable even to establish that he was "fired" on account of his speech. However, even assuming that he were able to meet that burden, it is unquestionable that the alleged conduct, as evidenced at trial, does not in any way rise to the level of the conduct deemed in Agis to be "extreme and outrageous," "beyond all

11

possible bounds of decency," and "utterly intolerable in a civilized community." Instead, the evidence submitted at trial has only demonstrated that Plaintiff's contract was terminated in a rather routine manner. As a matter of law, this Court should direct a verdict in favor of the Defendant with respect to Plaintiff's Count III claim for Intentional Infliction of Emotional Distress.

## CONCLUSION

For the foregoing reasons, Defendant John Cronin respectfully requests that this Court direct a verdict in his favor with respect to all Counts of the Plaintiff's Amended Complaint.

> Respectfully Submitted,
> DEFENDANT JOHN CRONIN,
> By his Attorneys,
> THOMAS F. REILLY
> ATTORNEY GENERAL
>
> /s/ Brian Donovan
> Jean M. Kelley, BBO #265540
> Brian M. Donovan, BBO #650551
> Assistant Attorney General
> Office of The Attorney General
> Government Bureau/Trial Division
> One Ashburton Place, Room 1813
> Boston, MA 02108
> (617) 727-2200 x 3327
> jean.kelley@ago.state.ma.us
> brian.donovan@ago.state.ma.us

13

## CERTIFICATE OF SERVICE

I hereby certify that the foregoing document was served on counsel of record for the plaintiff by hand on March 16, 2006.

Daniel S. Sharp
Elaine Whitfield Sharp
Attorneys for Plaintiff
196 Atlantic Avenue
Marblehead, MA 01945

s/ Brian M. Donovan
Brian M. Donovan
Assistant Attorney General
brian.donovan@ago.state.ma.us